## ERB vs. THE STATE.

LIQUOR LICENSE: *Dram-shops.*

> Between the twenty-eighth of March, 1879, when the liquor law of the eighth of March, 1879, went into operation, and the general election of 1880, no dram-shop license could be issued, and no one could keep a dram-shop or drinking-saloon without being amenable to the penalty of the act.

---

Erb vs. The State.

---

ERROR to *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.
*F. W. Compton and R. A. Howard,* for appellant.
*Henderson, Attorney General, contra.*

ENGLISH, C. J.    On the twenty-third of December, 1879, S. Erb was indicted in the circuit court of Pulaski county, for keeping a dram-shop without license.   There were two counts in the indictment.

The first count charged in substance (after an awkward commencement), that "said S. Erb, on the fifteenth day of December, 1879, in the county of Pulaski, etc., did then and there unlawfully keep a dram-shop, for the retail of ardent spirits by quantities less than one quart, and by the drink, without having first obtained a license from the county court authorizing him to exercise the privilege of keeping a dram-shop, against the peace," etc.

The second count charged that "said S. Erb, on the fifteenth day of December, 1879, in the county aforesaid, did then and there keep a dram-shop, where ardent spirits *are* sold and drank, he, the said S. Erb, having then and there unlawfully failed to procure a license from the county court authorizing him to exercise the privilege of keeping a dram-shop, against the peace," etc.

The defendant demurred to the whole indictment, on the ground that the facts stated in it did not constitute a public offense; and the court overruled the demurrer.

The defendant was tried the eleventh of February, 1880, on plea of not guilty, and the jury found him guilty and assessed a fine against him of $200.

He moved for a new trial, on the grounds that the verdict was contrary to law and evidence; that the court

erred in refusing the fourth and fifth instructions moved by him; and also erred in its general charge, in its construction of the act of March 8, 1879, and as to the punishment to be inflicted for the offense charged.

The court overruled the motion, and defendant took a bill of exceptions. Judgment was entered in accordance with the verdict, and defendant brought error.

It appears, from the bill of exceptions, that on the trial the following evidence, in substance, was introduced:

Mandeville Howe testified that defendant had a grocery store on the corner of Ninth and Broadway, in the city of Little Rock, where he kept liquors and wines, as well as other articles commonly kept by grocery-keepers, such as flour, meat, etc. He sold whisky and wine in any quantity wanted, to be drank in the house. Witness was in his house frequently during the month of April, 1879, and bought whisky by the drink and drank it there. One time he bought a drink and paid for it, and at another time he bought a drink from him and did not pay for it. He arrested defendant in April, 1879, at the time he arrested all the saloon keepers. Defendant had a regular bar.

Washmood testified that defendant kept an ordinary grocery store, and sold whisky and wine—sold whisky in all shapes, to be drank on the premises. Saw it drank there in December, 1879, before he went before the grand jury as a witness, etc.

R. W. Worthen, clerk of the county court, testified that he issued to defendant what he called a wholesale license; that is, license to sell whisky in quantities not less than one quart, on the nineteenth of January, 1879. He did not execute a bond, as it was not required. He did not get a dram-shop license. In the sixth ward, dram-shop license was voted down, at an election held in November, 1878,

for one year. That dram-shop license could not be issued in that ward until the year after the election had expired. The defendant obtained the only license the county court would grant him, or any one, in the sixth ward, under that election.

The court gave the first, second and third instructions moved for defendant, which follow:

"1. Before the jury can convict defendant, they must find, from the testimony, that he kept a dram-shop, for the sale of ardent liquors, without procuring a dram shop license.

"2. That keeping a dram-shop is keeping a house for the purpose of generally selling ardent, vinous, malt or fermented liquors.

"3. That the mere sale of ardent, vinous, malt or fermented liquors in a less quantity than one quart, does not constitute the offense charged in the indictment, but the jury must find, from the evidence, that the defendant kept a house for the purpose of such sale."

It may be remarked, in passing, that, under these instructions, there was evidence to warrant the verdict.

Instructions four and five, moved for defendant, and refused by the court, follows:

"4. If the jury find from the evidence that the sale of liquor, with which the defendant stands charged, was during the month of December, 1879, then they can not find a verdict of guilty against him under this indictment.

"5. If the jury find from the evidence that the sale of liquor charged herein was after the twenty-eighth day of March, 1879, they can not find the defendant guilty under this indictment."

The general charge of the court was as follows:

"The dram-shop, or drinking-saloon, contemplated by

Erb vs. The State.

the act upon which this indictment is based, is not neces-
sarily confined to a place where there is a regular bar and
an exclusively saloon or whisky business carried on. But
if it be a house engaged in the regular business of selling
whisky by the drink, or in quantities less than one quart,
to be drank on the premises, then it comes within the pro-
hibitory clause of the act, and the party is not permitted
to carry it on without a license, and if he does so he is
punishable under this indictment.

"A license to sell whisky by the wholesale is intended
to protect only those houses whose whisky is sold in quan-
tities of one quart or more, and would be no protection to
a party carrying on the business of keeping a dram-shop
or drinking-saloon, who is, by the law, required to pay for
and produce an additional license.

"The court instructs that, by the act of March 8, 1879,
all prior acts on this subject were expressly repealed, and
from the twenty-eighth of March, 1879, when, by its terms,
it went into operation, this act became and is the law of
the land on this subject.

"2. That the act was designed to regulate the keeping
of dram-shops or drinking-saloons, and annexes certain
conditions to be complied with before any person shall be
permitted to exercise the privilege. He is to present his
petition to the county court for license, stating the place
where he purposes to keep his saloon; is to enter into bond
in the sum of $2,000, as prescribed; is to accompany his
petition with a receipt showing the payment of the two
hundred dollars required of all persons selling vinous or
ardent liquors in any quantities, and is to pay such ad-
ditional amount for license as the county court shall re-
quire. Thereupon the county court is to grant him a

license to keep such saloon until the ensuing thirty-first day of December.

"Now the difficulty in applying the law grows out of the provision in section seven, that there 'shall be at each· general election for state officers,' an election to determine ·the question whether or not license should be granted by the county court, and the fact that the first general election subsequent to the act occurs next September, and hence from the twenty-eighth of March, 1879, to September, 1880, there is an obvious impossibility of compliance with this provision.' Section 14 provides that 'any person who shall keep a drinking-saloon or dram-shop without procur-. ing a drinking-saloon or dram-shop license, as provided by this act, shall be deemed guilty of a misdemeanor,' etc. The court instructs that the fact that this provision could not be complied with would not defeat the operation of the act; that the fourteenth section should not, on the other hand, be construed to amount to an absolute prohibition, but that, on the petitioner complying with the provisions of the act in other respects, he would be entitled to his license from the county court. The condition as to any election being an impossibility prior to September, 1880, is simply dispensed with until that time.

"That under such construction, section 14 is operative, and has been since the twenty-eighth day of March, 1879, and saloon keepers must procure their license as therein provided for, and are properly punishable for keeping saloons or dram-shops without such license."

To which charge of the court the defendant excepted.

It appears that plaintiff in error procured no license to keep a dram-shop for the year 1879, under the act of thirtieth May, 1874, because the electors of the Sixth ward had voted against license at the election held under that act in November, 1878; and if that act had not been re-

pealed by the act of eighth of March, 1879, he could have procured no license to keep a dram-shop in the Sixth ward until after the next annual election in November, 1879, and not then unless a majority of the electors of the ward had voted in favor of the license.

His counsel submits that, inasmuch as the act of thirtieth of May, 1874, was repealed by the act of ninth of March, 1879, and the latter act provided for no vote on the question of license until the general election in 1880, he had the right to keep a dram-shop without license until such election should be held.

No doubt, in the absence of any law forbidding, or regulating it, any person is at liberty to keep a dram-shop. But the occupation being pernicious in its character to society, it is well settled that it is under the control of the legislature in the exercise of the police power of the state.

The first section of the act of eighth March, 1879, makes it unlawful to sell, and, in effect, absolutely prohibits the sale of vinous, malt, or fermented liquors, or any compound or preparation thereof, commonly called tonics, bitters, or medicated liquors. in any quantity, or for any purpose whatsoever, without license.

There are but two exceptions to this sweeping prohibition in the act, one in favor of manufacturers, who are left at liberty to sell in original packages, not to contain less than five gallons (section 1), and the other in favor of persons who may manufacture and sell wines from native grapes, or berries, or other fruits grown in the state, and who sell no other liquors—ardent, malt, vinous or fermented. (Section 15). There is certainly no exception in favor of dram shops or saloons.

The act provides for two classes of licenses, one to per-

sons who desire to sell in quantities not less than one quart, and the other for dram-shops or drinking-saloons.

The mode of obtaining from the county courts, license to sell in quantities less than a quart, and the terms on which such license may be procured, are prescribed in sections two to six of the act, and section five fixes the penalty for selling without such license. No vote of the electors of townships and wards is required to authorize the county courts to grant such license.

But sections 7, 8 and 9, of the act, plainly require a majority vote of the electors of any township or ward in favor of keeping a dram-shop or drinking-saloon therein, before the county court can lawfully grant such license. There is no power in the court to issue such license except upon such favorable vote. Following sections prescribe the mode of application and terms on which such licenses are to be granted; and section 14 provides that "any person who shall keep a drinking-saloon or dram-shop, without procuring a dram-shop or drinking-saloon license, as provided by this act, shall be deemed guilty of a misdemeanor, and on conviction shall be fined in any sum not less than two hundred dollars," etc.

In requiring a vote of the electors of a township or ward to authorize dram-shop licenses, the legislature continued the policy of the act of thirtieth of May, 1874, but abandoned the policy of the annual elections required by that act, because, perhaps, of, inconvenience and expense, and required the electors of each township and ward to vote on the question of dram-shop or drinking-saloon license at each general election held for state officers. Sec. 7.

It can not be supposed that the legislature did not know or overlooked the fact that the general elections for state officers were, by the constitution, biennial, and that no such election would be held until the fall of 1880.

They did not seem to suppose that communities would suffer much for want of dram-shops or drinking-saloons before the general election in 1880, and did not provide that they should have them after that election unless they voted for them.

The court below did not err in refusing the fourth and fifth instructions moved for plaintiff in error, nor in overruling the motion for a new trial.

His honor, the circuit judge, thought that until the general election in September, 1880, the county court might have granted the plaintiff license to keep a dram-shop, without a vote of the electors of his ward, on his applying therefor, paying for the license, giving bond, etc., and that he should be punished for not doing so; while the learned counsel for plaintiff insist that he had the right to keep a dram-shop without license, as there was no provision to grant him any until after such general election. With all due respect, we think that neither view is in harmony with the provisions of the act of the eighth of March, 1879.

If the omission of the legislature to provide for an earlier election was a hardship upon persons desiring to keep dram-shops, it may have resulted in a benefit to communities.

Affirmed.