## STATE *v.* SCAMPINI.

### January Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, STAFFORD, and
HASELTON, JJ.

Opinion filed November 15, 1904.

*Intoxicating Liquors—Illegal Sales—Criminal Pleadings—
Information—Negation of License—Time and Place—Sale
by Wholesalers—License Commissioners—Powers—Action
on Bond of Licensee—Effect on Criminal Prosecution—
Judicial Notice—No. 90 Acts 1902—Construction—Consti-
tutional Law—Referendum—Delegation of Legislative
Powers—Equal Protection of Laws—Statutes—Unconsti-
tutional in Part.*

No. 90, Acts 1902, relative to traffic in intoxicating liquors, which pro-
vides for a referendum, does not thereby unconstitutionally dele-
gate legislative powers to the people.

Courts are bound to take notice of every public statute, and of the
facts therein recited or stated, including the time at which they
take effect.

The constitutionality of an act cannot be contested by one whose rights
it does not affect, and who therefore has no interest in defeat-
ing it.

Under No. 90, Acts 1902, one who sells intoxicating liquor without a
license, or in a manner not authorized by his license, is guilty
of a crime, regardless of whether the license commissioners
represent the leading political parties; hence he cannot assail the
constitutionality of the provision that the license commissioners
shall be three persons representing the two leading political
parties.

Under No. 90, Acts 1902, it is no defence to a seller without a license
that the city or town did not vote "license," or that there were
no license commissioners to whom application for a license could
be made.

In an information charging a statutory crime, a negative averment
may be in the words of the statute, or in words of equivalent
meaning.

Under § 68, No. 90, Acts 1902, providing for the punishment of one who furnishes or sells liquor "without first procuring a license," an information negativing the fact of respondent's license in the words of the statute, and containing other counts charging selling "without first procuring a license to sell intoxicating liquor, except at wholesale," and selling at retail "without having a license so to do," is sufficient.

The technical certainty in alleging time and place, which is demanded in indictments for felonies, is not required in indictments for misdemeanors.

In indictments, negative averments need not be stated with time and place.

An information charging the sale of liquors without first having procured a license, in violation of No. 90, Acts 1904, need not allege that respondent "then and there" had no license.

Repugnancy between the counts of an information is no ground of demurrer.

In the construction of a statute, the general rule is that the cardinal purpose of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious.

Under No. 90, Acts 1902, a person having a license of the fourth class, can sell liquor only to persons holding a license to sell directly to consumers, and the liquor must be sold to such licensees for that purpose; all other sales are at retail, and not within the terms of a license of the fourth class, irrespective of the quantity sold.

An information against the holder of a fourth class license, under No. 90, Acts 1902, charging him with selling a pint of whiskey to one who had no license, sufficiently alleges that the sale was not at wholesale, and was in violation of said act.

An information against a holder of a fourth class license, under No. 90, Acts 1902, charging him with selling whiskey at "retail," sufficiently charges a crime under said act.

Under No. 90, Acts 1902, the license commissioners have judicial power in respect of the revocation of licenses; but they are not the sole prosecuting officers for instituting proceedings for violations of the act, nor is it necessary, as a condition precedent for instituting criminal proceedings for illegal sales of liquor by a licensee, that preliminary proceedings shall first be begun before the license commissioners.

The fact that a licensee is liable on his bond for any violation of the conditions or prohibitions of his license does not protect him from prosecution under No. 90, Acts 1902.          '

In a prosecution for selling liquor "without a license then in force," in violation of No. 90, Acts 1902, the words "then in force" do not affect the force of the averment, and are immaterial.

When an information for selling liquor without a license contains a sufficient negation of the license, other negations in the same count for the same purpose, whether argumentative or otherwise, are mere surplusage.

Under an information charging respondent with selling "intoxicating liquor" without a license in violation of No. 90, Acts 1902, evidence tending to show an' unlicensed sale of anything classed by the act as "intoxicating liquors" is admissible.

On questions arising under the Federal Constitution, the decisions of the Supreme Court of the United States are binding upon this Court.

That part of § 21, No. 90, Acts 1902, which excepts from the provisions of the act sales by the barrel, by the manufacturers thereof, of cider manufactured in this State, and sales by the barrel by farmers who raise apples to make the cider which they sell, if it is not drunk on the premises, and sales by the makers thereof of native wines manufactured in the State and not to be drunk on the premises, is, so far as it discriminates in favor of farmers and manufacturers of cider and native wines, a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States; still the act is not thereby rendered totally void, only so much of the act is void as makes any person liable for selling cider by the barrel not to be drunk on the premises, or for selling wine not to be drunk on the premises.

When a part of a statute is unconstitutional, the statute is not thereby rendered totally void unless all its provisions are so connected and interdependent that it cannot be presumed that the Legislature would have enacted one provision without the other.

INFORMATION for selling intoxicating liquor without a license in violation of No. 90, Acts 1902. Heard on general and special demurrer to the whole information, and to each count thereof, at the September Term, 1903, Washington

County, *Stafford,* J., presiding., Demurrers overruled, *pro forma.* The respondent excepted. The opinion fully states the case.

*J. W. Gordon, R. A. Hoar, H. W. Scott* and *William Wishart* for the respondent.

The information should allege that the people of the city of Barre had voted "Yes" under § 2, of the act. The court will not take judicial notice of the result of that vote. *Com.* v. *Green,* 98 Ky. 21; *Taylor* v. *Com.,* 40 So. W. Rep. (Ky.) 383; *Whitman* v. *State,* 80 Md. 410; *People* v. *Murphy,* 93 Mich. 41; *State* v. *Mackin,* 41 Mo. App. 99; *State* v. *Sorrell,* 98 N. C. 738; *Lowery* v. *State,* 34 So. W. Rep. 956; *Grider* v. *Tally,* 77 Ala. 422, 54 Am. Rep. 68; *Butler* v. *State,* 25 Fla. 374; *Seifried* v. *Connor,* 101 Pa. St. 202.

The referendum provisions of the act are unconstitutional. *Rice* v. *Foster,* 4 Har. 479; *Parker* v. *Com.* 6 Pa. St. 507, 47 Am. Dec. 480; *Mayes* v. *State,* 4 Ind. 343; *Meshir* v. *State,* 11 Ind. 482; *Barto* v. *Nimrod,* 8 N. Y. 483; *Santo* v. *State,* 2 Ia. 165, 63 Am. Dec. 487; *State* v. *Weir,* 30 Ia. 134, 11 Am. Rep. 115; *State* v. *Armstrong,* 3 Sneed 634; *Minn.* v. *Simonds,* 32 Minn. 540; *Ex parte Wall,* 48 Cal. 279, 17 Am. Rep. 425.

The discriminating provisions of § 21 make the act void, as class legislation. *State* v. *Cadigan,* 73 Vt. 245; *State* v. *Shedroi,* 75 Vt. 277; Cooley's Con. Lim. 391; *Connelly* v. *Union S. P. Co.,* 184 U. S. 540; *Cotting* v. *Stock Yards Co.,* 183 U. S. 79; *Weil* v. *Calhoun,* 25 Fed. 865; *Ex parte Kennebrew,* 35 Fed. 52; *State* v. *Montgomery,* 94 Me. 192; *Monmouth* v. *People,* 183 Ill. 634; *McCreary* v. *State,* 73 Ala. 480; *State* v. *Marsh,* 37 Ark. 356; *State* v. *Deschamp,* 53 Ark. 490; *Webber* v. *Va.,* 103 U. S. 344.

*John H. Senter,* State's Attorney for the State.

WATSON, J. The respondent is informed against by the state's attorney for the unlawful sale of intoxicating liquor. The information contains eight counts. A general and special demurrer is interposed to the whole information, and also to each count. The information is based upon section sixty-eight of No. 90, Acts of 1902. The act was approved December 11, 1902. Therein it is provided, "Sec. 100. This act shall take effect on the first Tuesday of March, A. D., 1903, provided that if a majority of the ballots to be cast as hereinafter provided shall be No, then this act shall take effect the first Monday in December, 1906; but as to sections 101, 102 and 103, this act shall take effect from its passage." "Sec. 101. The officers of every town or city whose duty it is to call a meeting of the legal voters of their respective towns or cities, shall call a special meeting according to the statutes made and provided, on the first Tuesday of February next, providing for an opportunity of the freemen of this state to express their judgment and choice in regard to this act by depositing their ballots in a box to be provided for that purpose by the presiding officer of such meetings respectively, with the words 'Yes' and 'No' written or printed thereon, and the return of the votes on this question shall be made by the clerks of the several towns and cities to the county clerks of their respective counties within twenty-four hours from the adjournment of such special meeting in their respective towns, and the several county clerks shall, within forty-eight hours, canvass the votes so returned, and shall forthwith certify and return to the secretary of state a statement of such canvass of the vote so returned to them."

"Sec. 102. On the thirteenth day of February next the secretary of state shall canvass the returns so made to him by

the county clerks, and shall within two days thereafter issue his proclamation certifying the result of such vote, and declaring the time when the provisions of this act shall take effect."

"Sec. 103.   All regulations provided by law for conducting freemen's meeting shall be applicable to the votes provided for on the referendum as provided for in section 101 of this act."

It is contended that by the provisions of these sections there is such a delegation of legislative power as renders the act unconstitutional.   But with this contention we cannot agree.   In answer to inquiries by the Governor the judges of the Supreme Court expressed the opinion that sections 100, 101, 102, and 103 took effect from the passage of the act, December 11, 1902.   Except certain sections which were governed by special provisions, the act was to take effect as provided in section one hundred.   The time there specified is the first Tuesday of March, 1903, unless a majority of the ballots cast by the legal voters under the provisions of section one hundred and one should be No, in which event it is the first Monday in December, 1906.   Hence the Legislature gave life to the act regardless of the votes of the people, and it took effect on the former date contingent only upon the fact that a majority of such votes should be in the negative in which case the time was postponed to the latter date.   The law by its terms was to become operative in any contingency.   It is unnecessary to look outside of our own State for authorities, for the same question has been decided by this Court.   The act of 1852, entitled "An Act to Prevent Traffic in Intoxicating Liquors for the Purpose of Drinking," contained a provision for the vote of the people to be taken in the same way and with like effect.   In *State* v. *Parker*, 26 Vt. 357, it was

urged that by reason of this provision the law was unconstitutional. But upon a careful review of the authorities and a full consideration of the case, it was held to be within that class of statutes where the time of taking effect is made to depend on a future contingent event, and therefore valid. We treat the decision in that case as determinative of the question now before us.

Nor was an allegation of the time when the act took effect necessary; for courts are bound to take notice of every public statute and the facts they recite or state. 1 Chit. Pl. 215; *Richardson* v. *Fletcher,* 74 Vt. 417, 52 Atl. 1064. This principle of law is none the less applicable where the time of a statute's becoming operative depends upon the result of a popular vote, to be declared together with the time when the act shall take effect by proclamation issued by the secretary of state as is provided in the law under consideration. *Slymer* v. *State,* 62 Md. 237; *Jones* v. *State,* 67 Md. 256.

By section 2 every town was required to vote at its town meeting held on the first Tuesday of March, 1903, and annually thereafter, whether licenses should be granted for the sale of intoxicating liquors therein, and if a town voted in favor of license, then, by section 3, the selectmen upon the application of six voters were required to call a special town meeting to determine the kind of license to be issued. By section 4, the licenses issued in such town shall conform to the vote cast and shall be in all respects subject to the provisions of the act. By section 7, when a town votes to issue licenses, the selectmen shall appoint a board of license commissioners consisting of three persons. "One member shall be appointed from each of the two leading political parties, and the third member may also be appointed from one of said parties."

Under the provisions of other sections of the act, this board, when duly organized, upon public hearing, may grant licenses to applicants therefor, pursuant to the vote of the town and within the provisions of the law; but it may at any time refuse to issue a license to an applicant whom it considers an unfit person to receive the same. The board of commissioners constitutes an important part of the machinery of the law, and when acting within its provisions, the power to issue licenses or to withhold them from any particular persons, rests exclusively with it.

It is contended that by reason of the provision in section 7. that "One member shall be appointed from each of the two leading political porties, and the third member may also be appointed from one of said parties," the act is unconstitutional. It is said that this is so because the Legislature cannot give preference to members of "leading political parties"; that it is class legislation; and that the Legislature cannot deprive a portion of the freemen of the State of the right to hold office. Here the respondent relies upon Article 8, Chapter 1, of the Declaration of Rights, which provides "that all elections ought to be free and without corruption, and that all freemen, having a sufficient, evident, common interest with, and attachment to the community, have a right to elect officers, and be elected into office, agreeably to the regulations made in this Constitution."

Whatever might be said upon this question in a case where it was properly involved, it is clear that the case before us does not legitimately present it.

By section 21 of the act in question, "No person shall furnish or sell or expose or keep for sale any intoxicating liquors except as authorized in this act." Excluding such sales as are, under subsequent provisions of this section, with-

out the operation of the act, unless a town votes in favor of license under the provisions of section 2, or a license of the fifth class is issued to a retail druggist and apothecary by the selectmen under sections 25 and 31, the act is prohibitory. And if a person within the provisions of the act for any reason is not licensed, or if he has a license but sells, exposes, or keeps for sale intoxicating liquor except as therein authorized, he is guilty of a violation of the law regardless of whether the license commissioners, if any, have been appointed from "the two leading political parties" or otherwise. Bishop's Stat. Cr. § 1006; *Lord* v. *Jones,* 24 Me. 439, 41 Am. Dec. 391; *Erb* v. *State,* 35 Ark. 631; *Reese* v. *Atlanta,* 63 Ga. 344. Hence the law requiring the board of commissioners to be constituted as specified in section 7, does not affect the rights of the respondent in this case, and he cannot be heard to complain. The constitutionality of an act cannot be contested by a party whose rights it does not affect and who therefore has no interest in defeating it. Cooley Const. Lim. (7 ed.) 232; *Clark* v. *Kansas City,* 176 U. S. 114, 44 L. ed. 392.

It is urged however that if the provisions relating to a license are constitutional, the information should show that the city of Barre had voted in favor of license, had determined the kind of licenses, and that the selectmen had appointed license commissioners. But such allegations are not essential. It has already been seen that a license can afford the licensee protection only when he keeps within its scope and the law under which it was granted. And it is no defence to a seller without a license that the city or town did not vote license, nor that there were no commissioners to whom application for it could be made. Under the former law the county commissioner was authorized to appoint an agent for any town in the county to sell therein intoxicating liquor to

be used for medicinal, chemical, and mechanical purposes only, and such agent received a certificate from the commissioner authorizing him, as agent of the town, to sell intoxicating liquor for such purposes only. V. S. 4448-4449. This certificate was the agent's license, but if he failed to conform to its provisions and the law under which it was given, he had no protection. In *State* v. *Parks*, 29 Vt. 70, the respondent pleaded his license as such an agent. But it was held that selling or giving away liquors for general purposes of drinking were not within his license and that for such acts of selling or giving away he was liable. See, also, *State* v. *Fisher*, 35 Vt. 584.

Formerly the State of New Hampshire had a statute providing a penalty if any person should at any time, "without license in writing from the selectmen of the town or place where such person resides," sell any liquors therein specified, with a further provision that if the selectmen should unreasonably neglect or refuse to license any suitable person, or in case there were no selectmen in the town or place, the Court of Common Pleas might license such person to exercise the business of a taverner. In *State* v. *Adams*, 6 N. H. 532, the respondent, a resident of the town of Haverhill, was indicted for selling a pint of rum without such a license. On demurrer, the respondent insisted that the indictment was insufficient because it contained no allegation that there were selectmen of that town to grant a license, and because it was not alleged that he had no license from the Court of Common Pleas. In disposing of the particular question, the Court said it was very apparent that if the respondent sold rum, as alleged in the indictment, without a license from the Court of Common Pleas, he was guilty of the offence charged, whether there were or were not any selectmen of Haverhill,

and that therefore an allegation that there were such select-men would have been wholly superfluous.

It is said that the information does not sufficiently negate that the respondent did not first procure a license to sell the liquor therein mentioned; nor that he did not first procure a license from the license commissioners of the city of Barre to sell the liquor in question; nor the source from which the license could be obtained.

The words of the statute are,—Sec. 68,—"A person who furnishes, sells, or exposes or keeps for sale intoxicating liquors of any kind *without first procuring a license*," etc. In the first and second counts the negative averments of a license are in the words of the statute. The averment in the third count is "without first procuring a license to sell intoxicating liquor, except at wholesale." The fourth count charges sell-ing by retail, "without having a license so to do." The fifth count charges selling by retail, negativing a license in the words of the statute. In each of the other counts the denial of the respondent's authority to sell as therein charged, is in words substantially like some one of those specifically stated above.

A negative averment may be in the words of the statute, or it may be in words of equivalent meaning. Any nega-tion in general terms covering the entire substance of the matter, will suffice; but it must be as broad as the provision to which it applies. Bish. Stat. Cr. § 1042; *State* v. *Munger*, 15 Vt. 290. And the case of *State* v. *Sommers*, 3 Vt. 156, upon which the respondent relies, instead of being an authority to the contrary directly supports this rule. There the in-dictment was based upon section 4 of an act passed in 1804 in addition to an act passed in 1798 directing the mode of ob-taining licenses and regulating inns and houses of public en-

tertainment. Under the law of those acts a person could obtain a license for keeping an inn or house of public entertainment, from the county court or from any judge of the same. The law also contained a provision whereby the civil authority and selectmen of any town could license any person or persons to mix and sell liquor "on days of general muster, and other public and proper occasions," for the space of three days, without naming or confining the sale to any house or place. The indictment after charging the sale of spirituous liquors contained the negation of authority, "not having a license from the county court within and for said County of Caledonia, nor from any judge of the same, nor from the civil authority and selectmen of said Barnet, to keep an inn or house of public entertainment, in said Barnet." It was held that the limiting words "to keep an inn or house of public entertainment" made the negation too narrow; for the respondent might have had a license and lawful authority "to sell spirits at the time and place he did, but not to keep an inn or house of public entertainment." The Court said that had those limiting words been omitted in the indictment, the sale complained of would have been without license from any legitimate source.

But it is further said that the averments negativing that the respondent had a license are not definite in time and place; that the general words of the statute must be applied specifically to the offence by the words "then and there" or some expression equivalent thereto.

While it is fundamental that material facts in an information or indictment must be alleged with certainty as to time and place, and that in so doing the words "then and there" are usually adopted when the connected acts must be shown to have been done at the same time and place as some

fact before alleged with time and place specifically stated; yet it is equally fundamental that the nicety which requires these words to be cautiously inserted to every material allegation in indictments for felony is not so strictly observed in indictments for misdemeanors. In indictments for such offences if time and place be added to the first act alleged, it shall be deemed to be connected with all the facts subsequently alleged. 2 Hale P. C. 178; 2 Hawk. P. C. ch. 23, § 88; 1 Chit. Cr. L. 221; 1 Arch. Cr. Pr. & Pl. (8th ed.) 257; *Commonwealth v. Bugbee,* 4 Gray, 206; *Commonwealth* v. *Doherty,* 10 Cush. 52; *Stout* v. *Commonwealth,* 11 Serg. & R. 177; See, also, *State* v. *Cook,* 38 Vt. 437; *Royce* v. *Maloney,* 58 Vt. 437, 5 Atl. 395; and *State* v. *Corcoran,* 73 Vt. 404, 50 Atl. 1110. Moreover, these averments being negative in character, no time need be stated. 1 Chit. Cr. L. 217; 2 Hawk. P. C. ch. 25, § 79; Com. Dig. Ind. G. 2; Bande's Case, 2 Cro. Jac. 41; *King* v. *Holland,* 5 T. R. 607, 616; Gould's Pl. Ch. III, § 98. And such allegations usually require no venue. Gould's Pl. Ch. III § 164.

It is said that the first, second, fourth and eighth counts in the information allege that the respondent sold liquor without first procuring or having a license, while the third, sixth, and seventh counts allege that he did not have a license or first procure one, except at wholesale; and that by reason thereof the first set of counts are repugnant to and inconsistent with the last set. It is not necessary, however, for us to consider this question, for if such repugnancy exists it is no ground of demurrer. 1 Chit. Cr. L. 253-254; 1 Bish. Cr. Proc. §§453, 492; *Kane* v. *The People,* 8 Wend. 203.

The third count charges that the respondent "did, without first procuring a license to sell intoxicating liquor, except at wholesale, sell one pint and no more of whiskey to John

Docherty, the said John Docherty not having obtained a
license to sell intoxicating liquor in the city of Barre, or in
any town or city in the State of Vermont; contrary," etc.
The fifth special cause of demurrer assigned to this count is
"That said third count shows that the respondent first pro-
cured a license to sell intoxicating liquor at wholesale, but
does not show that said sale as alleged was not a sale at
wholesale under a license to sell by wholesale."

Can a person holding a license to sell intoxicating liquors
by wholesale only lawfully sell a pint of whiskey to a person
having no license to sell intoxicating liquor in any town or
city in this State? is the question here presented. In many
states having license laws somewhat similar to the one under
consideration, what shall constitute a sale by wholesale and
what by retail are defined by statute. The statute in question
has no such provision, and the intention of the Legislature in
this regard must be ascertained from the provisions of the
whole act and the object sought to be attained thereby. The
purpose of the act is, as its first section in effect declares, to
regulate the sale of intoxicating liquors. In so doing it pro-
vides,—with the exceptions before noticed, which will be dis-
cussed presently,—that no person shall furnish or sell or ex-
pose or keep for sale any intoxicating liquor except as thereby
authorized by license granted under and according to the
provisions of the act; and other than the exceptions any person
who furnishes, sells, or exposes or keeps for sale such liquors
without first procuring a license, or a licensee who furnishes
or sells, or a person who exposes for sale such liquors after
his license has been forfeited, or during a suspension of its
operation, is subjected to a penalty. § 68. By § 23 a classi-
fication of licenses is made. By § 24 licenses are subject to the
condition "that no intoxicating liquor shall be sold otherwise
than is provided in the classification."

It will be observed that, under the first class, a licensee is limited to the sale of intoxicating liquors to be drunk on the premises; under the second class, he is limited to such as are not to be drunk on the premises; under the third class, he is confined to the sale of malt liquors, cider, and light wines containing not more than fifteen per cent. of alcohol at 60 degrees Fahrenheit, to be drunk on the premises; under the fourth class, he may sell intoxicating liquors by the wholesale only. The fifth class licenses are issued only to retail druggists and apothecaries who are registered pharmacists, to sell for medicinal purposes and only on the written prescription of a legally qualified physician. The sixth class licenses are issued exclusively to summer hotels and the sales are confined to guests resorting thereto for lodging or food. The seventh class licenses are issued only for the sale of malt liquors, cider, and light wines, containing not more than fifteen per cent. of alcohol at 60 degrees Fahrenheit, not to be drunk on the premises. So far as the statute is not specific in the making of this classification, it must be construed to carry out the legislative intent and to make the classification consistent with itself. Exclusive of the fourth class, the privileges given under each class are dissimilar to those granted under any other class; and a careful examination of the law discloses no legitimate sale of any kind of "intoxicating liquors," as defined by section one of the act, that can be made to consumers for their own consumption, which is not within the provisions of some one of these classes of licenses. Further the sales to consumers may be of every character that can be made under licenses of those classes; while on the other hand sales to persons who buy to sell again do not appear to be within their intended scope. It cannot be claimed that sales of the character last named can be made under a license

of either the fifth or sixth class. Nor under a license of either the first or third class, for the liquor there sold is to be drunk on the premises. Nor under a license of either the second or seventh class, for the provision in each that the liquor sold is "not to be drunk on the premises," presupposes that the purchaser is the consumer. Otherwise there is no force in that provision. Applied to liquor sold to a person to sell again, such a limitation is absurd. It is not found in connection with a license of the fourth class. These facts are significant in showing the intention of the Legislature regarding the sense and scope to be given the clause providing for a license to sell by the wholesale.

The presumption is that the Legislature had a definite purpose in making the classification and has adopted and formulated the divisions and limitations in harmony with that intent, and that all classes of licenses which may be had under the law are necessary to accomplish it. The general rule is that the cardinal purpose or intent of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious. Suth. Stat. Constr. § 240; *Catlin* v. *Hull*, 21 Vt. 152. Construed according to this rule it may well be said that a license to sell by wholesale, grants privileges not within the legal scope of the other classes. It follows that sales "by wholesale" within the meaning of this act are such only as may be made to persons holding a license to sell direct to consumers for the purpose of consumption, and the liquor must be sold to such licensees for that purpose; and that all other sales, that is, such as may be made under a license of any class other than the fourth, are sales "at retail." Under this construction of the law, the distinction between wholesale and retail depends not alone on the quantity sold, but also on the purpose of the sale and the character of the purchaser. A

similar distinction was made by the court of last resort in Tennessee, in *State* v. *Lowenhaught,* 11 Lea, 13, and in *Webb* v. *Baird,* 11 Lea, 667.

Not only is this construction in accordance with the manifest intention of the Legislature, but it is also in harmony with well established definitions of the terms "wholesale" and "retail." In 12 Ency. Eng. L. 587, it is said that "a sale by 'wholesale,' *prima facie,* means a sale by a merchant to a retailer." And in Stroud's Judicial Dictionary, 2327, referring to Bacon, V. C. in *Treacher* v. *Treacher,* W. N. (74) 4, it is said that "as a general rule 'wholesale' merchants deal only with persons who buy to sell again; whilst 'retail' merchants deal with consumers."

The allegations in the third count show that John Docherty, to whom the respondent is there charged with selling a pint of whiskey, did not have a license to sell intoxicating liquor in the city of Barre, nor in any town or city in this State. He was therefore not a licensed retail dealer, and the sale alleged to have been made to him by the respondent could not have been by wholesale. The third count in this respect is sufficient, as are also the sixth and seventh counts to which a similar objection is made.

The fourth, fifth, and sixth counts severally charge the selling of one pint of whiskey by "retail," etc. It is argued that these counts are insufficient because there is no such crime or offence under the law as unlawfully selling intoxicating liquor by retail. Manifestly, as already shown, the lawmakers had in mind the distinction between sales by wholesale and sales at retail and legislated accordingly. A licensee must be treated as knowing the law. The phrase "by the wholesale" specifies particularly the kind of sales that may be made under a license of the fourth class. When the holder

of such a license is charged with selling a pint of whiskey at retail he is given to understand with sufficient certainty that he is charged with selling a pint of whiskey to a consumer, a sale not authorized by his license. In charging such an offence, no precise technical words or expressions are required to be used. There is no rule that other words shall be employed than such as are in ordinary use, or that in criminal pleading, a different sense is to be put upon them than what they bear in ordinary acceptation. 1 Chit. Cr. L. 173. We think the allegation charges the respondent with a crime under the law, and that the three counts mentioned are sufficient in this respect.

In the demurrer to the third count the seventh cause assigned is that the allegations do not show that any proceedings were instituted by the board of commissioners against the respondent for violating the provisions of the act under which he was licensed; and the eighth cause assigned is that it does not appear that the commissioners have called the alleged offence to the attention of the state's attorney, and that therefore he has no jurisdiction to prosecute.

By §45, boards of license commissioners shall hold meetings not less than once in three months, when constables and other officers of the law shall report any indications they have observed, and information received tending to show violations of this act by a licensee or of sales or furnishing of intoxicating liquor by unlicensed persons. By § 46, such officers shall report forthwith to the board any such violation or unlicensed selling or furnishing they at any time observe or have brought to their attention. By § 47, any citizen may make complaint to the board at any time. By § 48, upon receipt of information or complaint as provided in the two preceding sections the board shall immediately investigate and

ascertain if the complaint is well grounded. If probable cause is found for proceeding against a licensee for a violation of any of the conditions of his license, or of the regulations prescribed in this act, the board shall issue a summons to him to appear and show cause why his license should not be revoked. Sections forty-nine to fifty-three inclusive relate to the hearing before the commissioners. By § 54, if on the hearing the board finds the charge established, and the offence of such gravity that the license is declared forfeited, the board shall thereupon bring the matter to the attention of a town grand juror or state's attorney who shall prosecute the offender before a court of competent jurisdiction. By § 55, if the offence is not such as to work a forfeiture of the license, but the nature of it is such as to call for some penalty, in the judgment of the board, it shall bring the matter to the attention of a town grand juror or state's attorney who shall institute prosecution if in his judgment the evidence is sufficient to warrant a conviction. And by § 57, if the information or complaint to the board be in regard to a violation of the law by an unlicensed person, the board shall institute prosecution for such violation; and for the purpose of the provision of this section each commissioner shall have the same power to make presentment as a town grand juror has.

It is contended that by the provisions of these sections the board of commissioners is made the exclusive tribunal for preliminary proceedings against licensed persons for all violations of the law, and that town grand jurors and state's attorneys can prosecute such persons for illegal furnishing and selling only on complaint of the board. We cannot adopt this view. It is very apparent that the primary purpose of the proceedings by the commissioners against a licensee, under the sections referred to, is upon the question of the forfeiture of

the license. Herein they have judicial powers, and if the license is declared forfeited an appeal may be had to the county court, § 56. Whether the proceedings result in a forfeiture of the license or not, no power is given to the board to prosecute the licensee for a penalty under the law. It can only bring the matter to the attention of a town grand juror or state's attorney. And then,—in case the license has not been forfeited—the town grand juror or state's attorney, to whom the complaint is made, is supposed to prosecute only when in his own judgment the evidence adduced is sufficient to warrant a conviction. Notwithstanding it is made the duty of constables and other officers to report to the board violations of the law by a licensee, and complaints may be made to it by other citizens, the law does not contemplate that such officers and other citizens shall not make complaints directly to a town grand juror or a state's attorney. The complaints may be so made, and when made they may be acted upon by the prosecuting officers the same as in the administration of other branches of the criminal law. That the intent of the Legislature was not to make the commissioners exclusively the prosecuting officers for instituting proceedings for offences calling for a penalty under the law is evident from the fact that by section 57, the only instance where they may so prosecute, they are given "the same power to make presentment as a town grand juror has." Thus distinctly recognizing the power of the latter. In *Commonwealth* v. *Murphy,* 147 Mass. 577, it was held that a statute providing that the "Mayor and aldermen of cities and the selectmen of towns shall prosecute to final judgment all violations" of a certain section of the liquor law, was intended to impose a duty upon the officers named; but that it was directory only, and did not exclude the right of any other citizen to enter complaints for a violation of the law.

But it is said that a person having a license in force is liable upon his bond for any wilful violations of any of the conditions or prohibitions of his license, and that therefore he cannot be prosecuted under section 68; that this must be so to avoid a double penalty for the same offence. An action on the bond is of a civil nature and does not take the place of nor prevent a prosecution by information or indictment for an act made criminal under the law. Practically the same question was before this Court in a case arising under the former liquor law, and the decision thereon is full authority for our holding here. By that law agents appointed and licensed by the county commissioners to sell intoxicating liquor for medicinal, chemical, and mechanical purposes might be required by the commissioners to give a bond running to the county, conditioned for the agents' selling of intoxicating liquor in conformity to the provisions of the law relating to the traffic in such liquor, and to such rules and regulations respecting the same as had been or might be prescribed by the commissioner, not inconsistent with that law. Gen. St. 592. In *State* v. *Parks,* before cited, the respondent pleaded particularly in addition to his license as agent, the giving of such a bond. Thereon the Court said "the fact that a bond is given does not seem to us any bar to the remedy by indictment. The remedies are by no means concurrent, nor can the bond be made to take the place of the public prosecution; certainly not when imprisonment is the penalty. If there is any liability to double prosecution for any violations of law by the agent, there is certainly no more danger of his suffering double punishment than in any case where there are concurrent remedies for the same cause of action, as in contract or tort."

The eighth count is said to be argumentative, nowhere directly averring that the respondent did not then and there

have a license to sell said intoxicating liquor or that a license had not been issued to the respondent authorizing him then and there to make the alleged sale of one pint of whiskey. This count contains three averments negativing a license. The first is "without any license then in force therefor." This in substance is like the negation in the fourth count, and needs to be noticed further only to say that the words "then in force" do not affect the force of the averment and are immaterial. Since this averment is sufficient, the other negations in the same count for the same purpose whether argumentative or otherwise, are mere surplusage.

This brings us to the consideration of the most important question in the case, namely, whether this act is repugnant to the 14th Amendment of the Constitution of the United States. The law provides, § 21, "No person shall furnish or sell or expose or keep for sale any intoxicating liquor except as authorized in this act; but the provisions of this act shall not apply to sales by the barrel by the manufacturers thereof of cider manufactured in this State or to sales by the barrel by farmers who raise apples sufficient to make the cider which they sell, if it is not drunk on the premises. Nor shall the provisions of this act apply to sales by the makers thereof of native wines manufactured in this State and not to be drunk on the premises of the maker."

The respondent insists that by reason of the provisions in this section, the law unjustly discriminates in favor of farmers, and of manufacturers of cider in this State, and of makers of native wines manufactured in the State, and that therefore it denies the equal protection of the laws guaranteed by that amendment. It is argued on behalf of the State that the respondent is charged only with selling whiskey, and that hence his rights are not affected by these provisions relat-

ing solely to the sale of cider and wine. By the first section of the act cider and all wines are classed as "intoxicating liquors." In the first count of the information the respondent is charged with selling "intoxicating liquor," without naming the kind. Under such an allegation, evidence tending to show an unlicensed sale of anything classed as "intoxicating liquors" would be admissible. *State* v. *Reynolds,* 47 Vt. 297; *State* v. *Waite,* 72 Vt. 108, 47 Atl. 397. It becomes necessary therefore to pass upon the constitutional question here raised in the determination of the case.

The act under consideration assumes to regulate the traffic in intoxicating liquors, and it prohibits sales by all persons except those who are licensed by the public authorities, and those who are exempt from the operations of the law. It comes within the ordinary police regulations which a state may make in respect to all classes of trade or employment for the comfort, safety, and welfare of society. *Bancroft* v. *Dumas,* 21 Vt. 456; *Lincoln* v. *Smith,* 27 Vt. 328; *State* v. *Hodgson,* 66 Vt. 134, 28 Atl. 1098. Under such laws classifications may be made. All that can be required is that they be general in their application to the class or locality to which they apply. But a statute is not free from unjust discrimination, if it selects particular individuals from a class or locality, and subjects them to peculiar rules, or imposes upon them special obligations or burdens from which others in the same locality or class are exempt. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. ed. 220. The classification attempted by section 21 creates four classes: (1) persons who cannot furnish nor sell nor expose nor keep for sale any "intoxicating liquors" without first procuring a license; (2) manufacturers thereof of cider manufactured in this State; (3) farmers who raise apples sufficient to make the cider which they sell; (4) the

makers thereof of native wines manufactured in this State. Persons within the second or the third class may sell their cider by the barrel if not drunk on the premises; and those within the fourth class may sell the product of their manufacture of native wines, not to be drunk on the premises of the maker, *ad libitum.* The mere fact of classification is not enough to relieve it of conflict with the equality clause of the 14th Amendment. The classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150, 41 L. Ed. 666; *State* v. *Hoyt,* 71 Vt. 59, 42 Atl. 973. In the exercise of the police power the regulations must have reference to the comfort, safety, or welfare of society. Cooley Const. Lim. (7th ed.) 837; *Thorpe* v. *Rutland & B. R. Co.,* 27 Vt. 140, 62 Am. Dec. 625; *Lawton* v. *Steele,* 152 U. S. 133, 38 L. ed. 385. So also the attempted classification in a statute thus limited as to the objects to which it is directed must rest upon some difference which bears a reasonable and just relation to some one of the same ends, for that is the act in respect to which the classification is proposed. In *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 46 L. ed. 679, the Court, through Mr. Justice HARLAN, said: "The state has undoubtedly the power, by appropriate legislation, to protect the public morals, the public health, and the public safety; but if, by their necessary operation, its regulations looking to either of those ends amount to a denial to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void." In *Hayes* v. *Missouri,* 120 U. S. 68, 30 L. ed. 578, the Court, by Mr. Justice FIELD, said this amendment "does not prohibit legislation which is limited either in the

objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." In *State* v. *Harrington,* 68 Vt. 622, 35 Atl. 515, where the "itinerant vendors" act was upheld as a police regulation on the ground that it granted no exclusive privileges to any persons of the class to which the law applied, this Court said it was only when individuals of the class are singled out for exemption, that the inequality is manifest.

In the State of Ohio under the statute there known as the "Dow Law," an annual tax is assessed upon the business of every person trafficking in intoxicating liquors, and for each place where such business is carried on by him. The same statute provides that the phrase "trafficking in intoxicating liquors," as used in that act, "does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof, at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time." In *Reymann Brewing Co.* v. *Brister,* 179 U. S. 445, 45 L. ed. 269, the orator, a corporation resident in and a citizen of the State of West Virginia and there the owner and operator of a brewery, sought to restrain the collection of such a tax assessed upon its business of trafficking in intoxicating liquor established in the city of Steubenville, in the State of Ohio. It was claimed by the orator that by the statute the domestic manufacturer may sell liquor in quantities of one gallon or more, at the place of manufacture, without being subjected to the tax, and that this operates as an illegal discrimination against the foreign competitor who must necessarily in that State sell at places other than the place of manufacture, and

is thereby subjected to the tax. It was held that there was no unjust discrimination, because the exemption was not confined to Ohio corporations or copartnerships, but extended as well to foreign corporations whose place of manufacture was within the State of Ohio; and that the tax was imposed on Ohio corporations which manufactured their goods in other states and established places for their sale in the State of Ohio, or which manufactured within the State, but established places there distinct from the manufactory where their goods were sold and delivered. It was further held that this law was enacted in the exercise of the police power, and that in distinguishing between places where the liquors are manufactured and those where liquors are sold to be drunk on the premises, the Legislature had in a measure drawn a line between the distillery and the brewery on the one hand and the saloon on the other, a distinction not unreal, and that by imposing the tax upon the latter, the law, to some extent, was calculated to lessen an acknowledged source of vice and disorder. See, also, *Adler* v. *Whitbeck,* 44 Ohio St. 539.

It cannot be said, however, that these cases arising upon the "Dow law" are determinative of the one before us; for that law does not undertake to prevent any one from engaging in the business specified. Nor does it apply to sales not made in the course of carrying on the traffic as a business. The word business implies an employment or occupation that is continuing,—*Parkhurst* v. *Brock,* 72 Vt. 355, 47 Atl. 1068,—and the tax is assessed upon a business which is being carried on. While, by the law now under consideration, all persons are prohibited from furnishing, selling, exposing or keeping for sale any intoxicating liquor except as authorized by that act; and except as specially otherwise provided in section 21, the procuring of a license is a condition precedent to the right

to make any sale or sales of such commodities. Hence the law furnishes no basis for a classification similar to that in the "Dow law," and no such classification is attempted by it.

In *Connolly* v. *Union Sewer Pipe Co.*, the validity of the "Illinois Trust Act," so called, of 1893, was involved. By that act, all trusts or combinations of capital, skill, or acts by two or more persons, firms, or corporations were prohibited. The breach of this law was, by the act itself, made a misdemeanor to be punished by a heavy fine. It was further provided therein that "The provisions of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser." It appears from the discussion of the case by the Court, that so far as the statute was concerned two or more agriculturalists or two or more live stock raisers might in respect to their products or live stock in hand, combine their capital, skill, or acts for the purpose of creating or carrying out restrictions in the sale of such products or live stock; or limiting, increasing, or reducing their price; or do many other acts and things prohibited by the statute, without subjecting themselves to the fine imposed by the statute, while exactly the same things, if done by two or more other persons, firms, corporations, or associations of persons who shall have combined their capital, skill, or acts, in respect of their property, merchandise, or commodities held for sale or exchange, would be punishable by fine. It was held that persons engaged in trade or in the sale of merchandise and commodities within the limits of the State, and agriculturalists and raisers of live stock, were all in the same general class, alike engaged in domestic trade, which was, of right open to all, subject to such regulations, applicable alike to all in like conditions, as the State might legally prescribe. The Court said: "In prescribing regulations for the conduct of

trade, it (the State) cannot divide those engaged in trade into classes and make criminals of one class if they do certain forbidden things, while allowing another and favored class engaged in the same domestic trade to do the same things with impunity. It is one thing to exert the power of taxation so as to meet the expenses of government, and at the same time, indirectly, to build up or protect particular interests or industries. It is quite a different thing for the state, under its general police power, to enter the domain of trade or commerce, and discriminate against some by declaring that particular classes within its jurisdiction shall be exempt from the operation of a general statute making it criminal to do certain things connected with domestic trade or commerce. Such a statute is not a legitimate exertion of the power of classification, rests upon no reasonable basis, is purely arbitrary, and plainly denies the equal protection of the laws to those against whom it discriminates."

In this respect the parallelism between the case just cited and the one before us is plainly manifest. Under the law in question, a manufacturer of cider in this State, may purchase apples without limit in quantity, make cider therefrom, and sell his manufactured product by the barrel at wholesale or by retail, if it is not drunk on the premises where sold. His right thus to sell is coextensive with the amount of his manufacture. Farmers who raise apples sufficient to make the cider which they sell, may sell it in the same way, if it is not drunk on the premises. A person may be a farmer and also a manufacturer of cider, in which event whether he raised the apples in whole, in part, or purchased them altogether, would make no difference; for so long as he sells by the barrel, if not drunk on the premises, he is without the pale of the law. Native wines may be made from grapes, currants, blackberries,

and from other fruits or berries which grow wild or by cultivation in this State. Yet the makers of such wines manufactured in this State may sell their product, if not to be drunk on the premises of the maker, in any manner and in any quantities they please. There is no limit under the law respecting the place or location where these commodities may be thus sold by such persons. Any one so exempt from the operation of the law may own or lease a building or part of a building in which to sell his cider or wine, contiguous to that occupied by a person holding a license of the fourth class authorizing him there to sell intoxicating liquors by the wholesale, or by a holder of a license of the seventh class authorizing him to sell, among other things, cider and light wines, not to be drunk on the premises, and in the building or part of building so owned or leased by the farmer or manufacturer, he may in person or by his agent sell his product, without license, under his immunity conferred by the law. Nor is this all, for he may sell them anywhere at his convenience, the public street not excepted. Can it be said that cider and native wines sold by the farmer or manufacturer are less harmful to the public than they are when sold by other persons? The injury to the public does not result from the difference between the individuals who sell, but from the natural injurious and evil consequences of the things sold. How then do farmers, and manufacturers of cider and of native wines in selling them, as they are permitted under the law, stand in any different class having a reasonable and just relation to either the comfort, or the safety, or the welfare of society from that of other persons or dealers who sell the same commodities in the same place and in the same way? In either case the article sold is "intoxicating liquor" by the terms of the statute; yet farmers and manufacturers may sell

without a license and with impunity, while all others who sell without authority by license are criminals and subject to a fine and in certain contingencies to imprisonment.

On questions arising under the Federal Constitution decisions of the Supreme Court of the United States are controlling upon this Court. The question under consideration is upon statutory provisions similar in principle to the provision in the Illinois statute involved in *Connolly* v. *Union Sewer Pipe Company*. That case is decisive of the one before us in this respect, and it must be held that the discriminations in favor of farmers and of manufacturers of cider and of native wines are unreasonable and unjust, and that by reason thereof the statute in question is a denial of the equal protection of the laws and unconstitutional. In the consideration of this question, we have not been unmindful of the cases of *Cronin* v. *Adams*, 192 U. S. 108, 48 L. ed. 365; *Lloyd* v. *Dallison*, 194 U. S. 445, 48 L. ed. 1062; *Missouri, etc. Ry. Co.,* v. *May*, 194 U. S. 267, 48 L. ed. 971; and *Field* v. *Barber Asphalt Paving Co.* 194 U. S. 618, 48 L. ed. 1142.

To what extent is the statute unconstitutional? is the question which follows,—a question hardly less in importance than the preceding. Where a part of a statute is unconstitutional, that fact does not authorize courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose or otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other. The valid and the invalid provisions may even be in the same section, and yet be so distinct and separable that the first may stand though the last fall. Whether they are contained in the same section is not the point, for the division into sections is purely artificial.

The question is whether they are essentially and inseparably connected in substance. If the unconstitutional portion can be stricken out and that which remains be complete in itself and capable of being executed in accordance with the apparent. legislative intent, wholly independent of that which was rejected, it must be sustained. Cooley's Const. Lim. 7 ed. 247; *People* v. *Kenney,* 96 N. Y. 294.

The particular portion of the statute that is derogatory to the equality clause of the 14th amendment, permits farmers and manufacturers to sell cider by the barrel, and the makers of native wines in this State to sell their manufactured product, not to be drunk on the premises.

The majority of the Court are of the opinion that the unconstitutional provisions are severable from the rest of the act; and that the law will be quite complete and can be executed according to the intention of the law-makers without these limitations. But this cannot be done by treating as a nullity the provisions which exclude such sales from the operations of the act; for by so doing the exempted persons would be made amenable to the law and subject to its penalties the same as others, which would confer upon the statute a positive operation beyond the legislative intent. The unauthorized discriminations consist in not permitting all persons within the same class to sell cider and wine in the same way. So much of the act therefore as renders other persons liable for selling cider by the barrel not to be drunk on the premises, and for selling wine not to be drunk on the premises, is inoperative and void. In *State* v. *Marsh,* 97 N. C. 514, involving discriminations in a somewhat similar liquor law, the same conclusions were reached.

*The pro forma judgment affirmed, and cause remanded.*