## STATE *v.* G. FRED PEET.

### May Term, 1907.

Present:   ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

### Opinion filed January 16, 1908.

*Constitutional Law—Nature and Scope of Interstate Commerce —Exclusive Control by Congress—Power of States—National Meat Inspection Law—Regulations by Secretary of Agriculture—Effect as Law—Statute Void as Regulation of Commerce—No. 182, Acts 1906—Construction of Statutes— Unconstitutional in Part—Criminal Law—Sufficiency of Information Charging Misdemeanor—Allegation of Time and Place.*

General demurrers, that together challenge all the counts of a declaration by enumeration, amount to a separate demurrer to each count.

With reference to subjects of commerce that are local and limited in their nature or sphere of operation, the states may prescribe regulations until Congress intervenes and assumes control; but as to subjects of commerce that are national in character and re-

29

quire uniformity of regulation affecting all the states alike, the power of Congress is exclusive; and its failure to regulate such commerce amounts to a declaration that it shall be free from state regulation.

That class of subjects which requires uniformity of regulation affecting all the states alike, includes the purchase, transportation, and exchange of commodities, and intercourse for the purpose of trade in any and all forms.

Articles recognized by Congress as subjects of interstate commerce must be conclusively presumed to have that status.

Whatever may be the extent of a state's police power respecting the order, morals, health or safety of its people, that power cannot be exercised over a subject committed to the exclusive control of Congress by the commerce clause of the Federal Constitution.

Since the regulations prescribed by the Secretary of Agriculture, in accordance with the requirements of the Act of Congress of June 30, 1906, "The Meat Inspection Law," exclude from interstate commerce, as too immature to yield wholesome meat, the carcasses of calves under three weeks of age, those regulations, by implication, authorize such commerce in carcasses of calves above that age, thereby recognizing them as subjects of interstate commerce; and that authorization and recognition has the force of federal law.

The purpose of a statute, whatever its language, must be determined by its natural effect.

A statute using general words will not be construed to have extra-territorial effect when to do so would render it unconstitutional, unless the words clearly indicate that intent.

So much of No. 182, Acts 1906, prohibiting the sale of diseased animals and meat, as penalizes keeping with intent to ship out of this State, for food purposes, the flesh of a calf that was less than four weeks old or weighed less than fifty pounds, dressed weight, when killed, is a direct interference with interstate commerce in violation of the commerce clause of the Federal Constitution, and void.

But the void provision is separable from the provision penalizing keeping the carcasses of such animals "with intent to sell" for food purposes,—which must be taken to mean "with intent to sell" in this State; and so the former provision may be rejected without invalidating the latter.

Where an indictment or information charges only a misdemeanor, if
time and place be added to the allegation charging the first act,
it will be deemed to be connected with all the subsequent
allegations of fact.

INFORMATION in fourteen counts charging violations of No.
182, Acts 1906, prohibiting the sale of diseased animals and
meat. Heard on demurrer to the several counts at the March
Term, 1907, Chittenden County; *Hall,* J., presiding. Demur-
rers overruled, *pro forma,* and information adjudged sufficient.
The respondent excepted. The opinion sufficiently states the
nature of the information and the scope of the demurrers.

By an Act of Congress, approved June 30, 1906, and in force
at the alleged times of the committal of the offences charged in
the various counts of the information, it was provided:

"That for the purpose of preventing the use in interstate
or foreign commerce, as hereinafter provided, of meat and meat
food products which are unsound, unhealthful, unwholesome, or
otherwise unfit for human food, the Secretary of Agriculture,
at his discretion, may cause to be made, by inspectors appointed
for that purpose, an examination and inspection of all cattle,
sheep, swine, and goats before they shall be allowed to enter into
any slaughtering, packing, meat-canning, rendering, or similar
establishment, in which they are to be slaughtered and the meat
and meat food products thereof are to be used in interstate or for-
eign commerce"; and that all diseased animals found on such in-
spection shall be set apart and slaughtered separately, etc. "And
said Secretary of Agriculture shall, from time to time, make such
rules and regulations as are necessary for the efficient execution
of the provisions of this Act, and all inspections and exam-
inations made under this Act shall be such and made in such
manner as described in the rules and regulations prescribed
by said Secretary of Agriculture not inconsistent with the pro-
visions of this Act. * * * That the provisions of this Act re-
quiring inspection to be made by the Secretary of Agriculture
shall not apply to animals slaughtered by any farmer on the
farm and sold and transported as interstate or foreign com-
merce, nor to retail butchers and retail dealers in meat and
meat food products, supplying their customers: Provided, That
if any person shall sell or offer for sale or transportation for
interstate or foreign commerce any meat or meat food products

which are diseased, unsound, unhealthful, unwholesome, or otherwise unfit for human food, knowing that such meat food products are intended for human consumption, he shall be guilty of a misdemeanor, * * *: Provided also, That the Secretary of Agriculture is authorized to maintain the inspection in this Act provided for at any slaughtering, meat-canning, salting, packing, rendering, or similar establishment notwithstanding this exception, and that the persons operating the same may be retail butchers and retail dealers or farmers; and where the Secretary of Agriculture shall establish such inspection then the provisions of this Act shall apply notwithstanding this exception.''

*V. A. Bullard* and *Cowles & Moulton* for the respondent.

Transportation of commercial commodities from state to state is interstate commerce; and a state legislature cannot burden or restrict it. *Henderson* v. *Mayor,* 92 U. S. 259, 23 L. Ed. 543; *Chy Lung* v. *Freeman,* 92 U. S. 275, 23 L. ed. 550; *R. R. Co.* v. *Husen,* 95 U. S. 465, 24 L. ed. 527; *Robbins* v. *Taxing Dist.,* 120 U. S. 489; *Corson* v. *Maryland,* 120 U. S. 502, 30 L. ed. 699; *W. U. Tel. Co.* v. *Massachusetts,* 125 U. S. 530, 31 L. ed. 790.

A state cannot prohibit the exportation of an article of commerce, though produced therein. *State ex rel. Corwin* v. *Ind. & Ohio etc. Co.,* 120 Ind. 576; *Mfg. Gas Co.* v. *Ind. Nat. Gas Co.,* 155 Ind. 545.

It is well settled that in a certain class of cases, arising under the power to regulate interstate commerce, the power of Congress is exclusive; 'in another class the states may regulate until Congress has acted. Congress has exclusive jurisdiction over subjects national in character, and which admit of only one uniform plan of regulation. *Gibbons* v. *Ogden,* 9 Wheat. 1; *A. & P. Tel. Co.* v. *Philadelphia,* 190 U. S. 160; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Mobile* v. *Kimball,* 102 U. S. 691; *Cardwell* v. *Am. Bridge Co.,* 113 U. S. 205. In such case, the failure of Congress to act is equivalent to a declaration that commerce shall be free and unrestricted. *Leisy* v. *Harding,* 135 U. S. 100; Cooley, Const. Lim. (6th Ed.) 595; Cooley, Prins. of Const. Law, (2nd Ed.) 68. Moreover, Congress has acted in this very matter. Act of Congress, June 30, 1906.

Nor can No. 182, Acts 1906, be justified as a valid exercise of the state's police power; for interstate commerce is not within the police power of a state, unless allowed by Congress. *Bowman* v. *C. & N. W. R. Co.,* 125 U. S. 465.

*Alfred L. Sherman,* State's Attorney, for the State.

Legislative acts to protect the health or morals of a community are within the police power of a state. *State* v. *Campbell,* 64 N. H. 422; 8 Cyc. 863; *Thorp* v. *Rut. & Bur. R. R. Co.,* 27 Vt. 149; *Powell* v. *Penn.,* 127 U. S. 78. The state has power to exclude, and it would seem to prohibit the exportation of, anything that is not an article of commerce because, as in this case, it is unwholesome. 2 Tiedman, Federal Control of Personal Property, §220; *State* v. *Snow,* 81 Iowa 642; *Plumley* v. *Massachusetts,* 155 U. S. 461; *Austin* v. *State,* 101 Tenn. 563; *Holden* v. *Hardy,* 169 U. S. 366; *State* v. *No. Pac. Exp. Co.,* 85 Minn. 403; *Organ* v. *State,* 56 Ark. 270, 19 S. W. 840; *State* v. *Geer,* 61 Conn. 144, 22 Atl. 1012.

There is nothing in the information that indicates that the flesh of these calves had begun to move from this State to another and that is the time when *interstate* commerce begins by the great weight if not all the decisions. The intent to ship out of the state does not make an article the subject of interstate commerce. 27 Am. St. Rep. 552; *Coe* v. *Errol,* 116 U. S. 517, *Kidd* v. *Pearson,* 128 U. S. 1; *The Daniel Ball,* 10 Wall. 557; *Turpin* v. *Burgess,* 117 U. S. 504; *Turner* v. *Maryland,* 107 U. S. 38; *Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Kansas* v. *Keibolt,* 123 U. S. 623; *U. S.* v. *Knight & Co.,* 156 U. S. 13; *U. S.* v. *Boyer,* 85 Fed. 425; *Burrows* v. *Delta, etc. Co.,* 106 Mich. 594.

WATSON, J. The information as amended contains fourteen counts, in Nos. 1, 3, 4, 7, 8, 9, 10, and additional counts 1, and 2, of which the respondent is charged with keeping with intent to ship out of this State, for food purposes, the flesh of calves which were less than four weeks old, and in Nos. 2, 5, and 6, of which he is charged with keeping with intent to ship out of this State, for food purposes, the flesh of calves which weighed less than fifty pounds each, dressed weight, when killed, and in Nos. 11, and 12 of which he is charged with keeping with

intent to sell, for food purposes, the flesh of calves which were less than four weeks old. The demurrers are general: one to the second, fifth, and sixth counts by enumeration, and one to all the other original counts by enumeration; and by agreement the latter demurrer is treated as in like manner covering the first and second additional counts. This in effect is the same as a separate demurrer to every count. *Darling* v. *Clement,* 69 Vt. 292.

The law upon which the information is based reads: "A person who sells or offers to sell or keeps with intent to sell for food purposes, or ships out of the State, or keeps with intent to ship out of this State, for food purposes, the flesh of any animal or fowl which died or was killed when diseased, or the flesh of a calf which was less than four weeks old or weighed less than fifty pounds, dressed weight, when killed, shall be imprisoned," etc. Laws of 1906, No. 182, sec. 1.

This statute is challenged as in conflict with article 1, sec. 8, of the Federal Constitution, which provides: "The Congress shall have power * * * to regulate commerce with foreign nations, and among the several states, and with the Indian Tribes." On the other hand it is contended on the part of the State that the Act, in purpose and result, is to prevent the dealing in meats, for food purposes, which are unwholesome and unfit for human consumption—hence to protect the health and morals of the community, which is within the police power of the State. It will be observed that the validity of the statute as applied to the flesh of animals and fowls which died or were killed when diseased, is not here involved. We are called upon to distinguish between the power of Congress to regulate commerce between the states and the so-called police power of the State, only with reference to those features of the statute a violation of which is charged in the information.

Although sometimes difficult of application to the case in hand, the law is well settled that when the subjects upon which the power is to be exerted are local and limited in their nature or sphere of operation, the states may prescribe regulations until Congress intervenes and assumes control of them; yet when they are national in character and require uniformity of regulation affecting all the states alike, the power of Congress is exclusive. And the non-action of Congress is tantamount to a declaration that all commerce within its exclusive control shall remain free

from burdens imposed by state legislation. . *Cooley* v. *Board of Wardens,* 12 How. 299, 13 L. ed. 996; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 29 L. ed. 158; *Pittsburg & S. Coal Co.* v. *Bates,* 156 U. S. 577, 39 L. ed. 538; *Leisy* v. *Hardin,* 135 U. S. 100, 34 L. ed. 128.

It is argued that the State has power to prohibit the exportation to another state of anything which is not an article of commerce as, in this case, the flesh of calves which were less than four weeks old, or which weighed less than fifty pounds, dressed weight, when killed, because unwholesome for human food. The question then arises whether such meat, for the purpose named, is an article of interstate commerce, and whether it is within the power of a state legislature to declare it otherwise.

On July 25, 1906, for the purpose of preventing the use in interstate or foreign commerce of meat and meat food products which are unsound, unhealthful, unwholesome, or otherwise unfit for human food, under the authority conferred upon him by the Act of Congress approved June 30, 1906, the Secretary of Agriculture issued regulations; "for the inspection, reinspection, examination, supervision, disposition, and method and manner of handling of live cattle, sheep, swine, and goats, and the carcasses and meat food products of cattle, sheep, swine, and goats, * * *."

Under Regulation 15, it is provided (X) "Carcasses of animals too immature to produce wholesome meat, all unborn and stillborn animals, also carcasses of calves, pigs, kids, and lambs under three weeks of age, shall be condemned."

Since these regulations were prescribed by the Secretary of Agriculture under authority of the Act of Congress before referred to, and are not inconsistent with the provisions of that Act, they have the force of law. *Nye* v. *Daniels,* 75 Vt. 81.

Under the general rule here applicable that the exclusion of one subject or thing is the inclusion of all other things, when the federal regulations excluded from use in interstate commerce, as too immature to produce wholesome meat, the carcasses of calves under three weeks of age, they by implication authorized such use to be made of the carcasses of calves above the age of exclusion, thereby recognizing them as articles of commerce; and since dressed weight is not there mentioned, it is not made a controlling element. Articles recognized by Con-

gress as subjects of interstate commerce cannot be held to be otherwise. In *Leisy* v. *Hardin,* 135 U. S. 100, 34 L. ed. 128, the Court, speaking through Mr. Chief Justice Fuller, said: ''Whatever our individual views may be as to the deleterious or dangerous qualities of particular articles, we cannot hold that any articles which Congress recognizes as subjects of interstate commerce are not such, or that whatever are thus recognized can be controlled by state laws amounting to regulations, while they retain that character; although, at the same time, if directly dangerous in themselves, the State may take appropriate measures to guard against injury before it obtains complete jurisdiction over them. To concede to a state the power to exclude, directly or indirectly, articles so situated, without congressional permission, is to concede to a majority of people of a state, represented in the state legislature, the power to regulate commercial intercourse between the states, by determining what shall be its subjects, when that power was distinctly granted to be exercised by the people of the United States, represented in Congress, and its possession by the latter was considered essential to that more perfect union which the Constitution was adopted to create.'' See also *License Cases,* 5 How. 504, 12 L. ed. 256; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, 43 L. ed. 49; *Austin* v. *Tennessee,* 179 U. S. 343, 45 L. ed. 224.

As has many times been held, commerce among the states comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale, and exchange of commodities between the citizens of different states; and the power to regulate, conferred upon Congress by the commercial clause, is one without limitation. To regulate commerce is to prescribe the rules by which it shall be governed—that is, the conditions upon which it shall be conducted; to determine how far it shall be free and untrammeled, how far it shall be subject to duties and other exactions, and how far it shall be prohibited. *Welton* v. *Missouri,* 91 U. S. 275, 23 L. ed. 347; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 29 L. ed. 158.

The purpose of a statute, in whatever language it may be framed, must be determined by its natural and reasonable effect. *Henderson* v. *Mayor of N. Y.,* 92 U. S. 259, 23 L. ed. 543; *Reid* v. *Colorado,* 187 U. S. 137, 47 L. ed. 108. Viewed by this rule, the purpose of the statute in question, as far as it is applicable

to this branch of the case, is plain. To keep with intent to ship out of this State, for food purposes, the flesh of a calf within the specified age or weight is made criminally punishable, the natural and reasonable effect of which is to prohibit, for the purposes named, intercourse with another state for the purpose of trade in such meat. Yet that class of commerce which admits and requires uniformity of regulation, affecting all the states alike, includes the transportation, purchase, sale and exchange of commodities. Clearly by those provisions of the statute the state legislature seeks to interfere directly with the freedom of interstate commerce, which is an encroachment upon the exclusive power of Congress. *Brown* v. *Maryland,* 12 Wheat. 419, 6 L. ed. 678; *Hannibal and St. Joseph R. R. Co.* v. *Husen,* 95 U. S. 465, 24 L. ed. 527; *Hall* v. *DeCuir,* 95 U. S. 485, 24 L. ed. 547; *County of Mobile* v. *Kimball,* 102 U. S. 691, 26 L. ed. 238; *Walling* v. *Michigan,* 116 U. S. 446, 29 L. ed. 691; *Coe* v. *Errol,* 116 U. S. 517, 29 L. ed. 715; *Brown* v. *Houston,* 114 U. S. 622, 29 L. ed. 257; *Robbins* v. *Shelby County Taxing Dist.,* 120 U. S. 489, 30 L. ed. 694; *Lake Shore & M. S. R. Co.* v. *Ohio, ex rel. Lawrence,* 173 U. S. 285, 43 L. ed. 702; *Caldwell* v. *North Carolina,* 187 U. S. 622, 47 L. ed. 336; *State* v. *Pratt,* 59 Vt. 590; *Vt. & Can. R. R. Co.* v. *Cen. Vt. R. R. Co.,* 63 Vt. 1.

Some of the cases here cited will be more particularly noticed. *Brown* v. *Maryland* involved the constitutionality of a statute of Maryland requiring the importer of foreign articles to take out a license before he should be permitted to sell his imported goods. It was held that the right to sell was connected, as an inseparable incident, with the law permitting importation; that any penalty inflicted on the importer for selling the articles in his character of importer was in opposition to the Act of Congress authorizing importation; and that any charge on the introduction and incorporation of the articles into and with the mass of property in the country was hostile to the power given to Congress to regulate commerce. In answer to the contention that this construction of the power to regulate commerce would abridge the acknowledged power of a state to tax its own citizens, or their property within its territory, the Court, through Mr. Chief Justice Marshall, said: "We admit this power to be sacred; but cannot admit that it may be used so as to obstruct the free course of a power given to Congress. We cannot admit that it may be used so as to obstruct or defeat the power to

regulate commerce. * * * If the states may tax all persons and property found on their territory, what shall restrain them from taxing goods in their transit through the state from one port to another, for the purpose of re-exportation? The laws of trade authorize this operation, and general convenience requires it. Or what should restrain a state from taxing any article passing through it from one state to another, for the purpose of traffic? or from taxing the transportation of articles passing from the state itself to another state, for commercial purposes? These cases are all within the sovereign power of taxation, but would obviously derange the measures of Congress to regulate commerce, and affect materially the purpose for which that power was given.''

In *Hannibal and St. Joseph R. R. Co.* v. *Husen*, 95 U. S. 465, 24 L. ed. 527, a statute of Missouri directly prohibited the introduction into the State of all Texas, Mexican, or Indian cattle during eight months of each year, without any distinction between such as might be diseased and such as were not, and made any person who should bring in such cattle in violation of these provisions, liable for all damages sustained on account of disease communicated by them. The suit was to recover such damages. The single question was, whether the statute was in conflict with the commerce clause of the Federal Constitution. It was held to be a plain regulation of interstate commerce; a regulation extending to prohibition; that whatever may be the power of a state over commerce which is completely internal, it can no more prohibit or regulate that which is interstate than it can that which is with foreign nations; that power over one is given by the Constitution to Congress in the same words as it is given over the other, and in both cases it is necessarily exclusive.

In *Robbins* v. *Shelby County Taxing Dist.*, 120 U. S. 489, 30 L. ed. 694, the Court had before it the question whether it is competent for a state to levy a tax or impose any other restriction upon the citizens or inhabitants of other states, for selling or seeking to sell their goods in such state before they are introduced therein. It was held not to be within the power of a state; for to tax the sale of such goods, or the offer to sell them, before they are brought into the state, is clearly a tax on interstate commerce itself.

In *Coe* v. *Errol*, 116 U. S. 517, 29 L. ed. 715, the real question was, whether logs intended for exportation to another state and partly prepared for that purpose by being deposited at the place of shipment, were subject to taxation like other property in the state. It was held that the logs were not exports, nor in process of exportation, until they were committed to the common carrier for transportation out of the state to the state of their destination or had started on their ultimate passage to that state; that until then it was reasonable to regard them as not only within the state of their origin, but as a part of the general mass of property there and liable to taxation, if not taxed by reason of their being intended for exportation. The Court, through Mr. Justice Bradley, said: "Of course they cannot be taxed *as* exports; that is to say, they cannot be taxed by reason or because of their exportation or intended exportation; for that would amount to laying a duty on exports, and would be a plain infraction of the Constitution, which prohibits any State, without the consent of Congress, from laying any imposts or duties on imports or exports; and, although it has been decided—*Woodruff* v. *Parham*, 8 Wall. 123, [75 U. S. bk. 19 L. ed. 382]—that this clause relates to imports from and exports to foreign countries, yet, when such imposts or duties are laid on imports or exports from one state to another, it cannot be doubted that such an imposition would be a regulation of commerce among the states and, therefore, void as an invasion of the exclusive power of Congress."

In *Caldwell* v. *North Carolina*, 187 U. S. 622, 47 L. ed. 336, the plaintiff in error was convicted in the state court for a violation of an ordinance requiring a license fee from persons engaged in selling and delivering picture frames or pictures. As an employee of a foreign corporation of Illinois, he went to the State of North Carolina for the purpose of delivering certain pictures and frames for which contracts of sale had previously been made by other employees of the corporation, who had preceded him there. The sender of the goods in the former State was the consignee in the latter. The court of last resort in North Carolina, affirming the conviction in the lower court, put its decision on the ground that there was a distinction between a case where the goods were shipped by the seller in one state direct to the purchasers in another, as in *Brennan* v. *Titusville*, 153 U. S. 289, 38 L. ed. 719, where it was held that the tax im-

posed was upon interstate commerce, and a case where the goods were not shipped direct to the purchasers, but to the vendor, and by his agent then delivered to the purchasers. It was held by the Federal Supreme Court that this difference did not deprive the transaction of its character as interstate commerce. Mr. Justice Shiras, speaking for the Court, said: ''It would seem evident that, if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to state taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser. That the articles were sent as freight by rail, and were received at the railroad station by an agent who delivered them to the respective purchasers, in no wise changes the character of the commerce as interstate.''

Moreover, the statutory provisions under consideration are not within the police power of the State. Whatever may be the extent of that power respecting domestic order, morals, health, and safety, it cannot be exercised over a subject confided exclusively to the commercial power of Congress. *Hannibal and St. Joseph R. R. Co.* v. *Husen,* 95 U. S. 465, 24 L. ed. 527. To the same effect is the case of *Henderson* v. *Mayor of N. Y.,* 92 U. S. 259, 23 L. ed. 543. There the Court, speaking through Mr. Justice Miller, said it was clear, from the nature of our complex form of government, that, whenever the statute of a state invades the domain of legislation which belongs exclusively to the Congress of the United States, it is void, no matter under what class of powers it may fall, or how closely allied to powers conceded to belong to the states.

We hold, therefore, that so much of the Act of 1906 as makes it punishable to keep with intent to ship out of this State, for food purposes, the flesh of a calf which was less than four weeks old or weighed less than fifty pounds, dressed weight, when killed, is in conflict with the commerce clause of the Constitution of the United States and void. It follows that all counts in the information are insufficient, except the 11th and 12th which will now be considered.

These two counts are for keeping with intent to sell for food purposes the flesh of a number of calves less than four weeks old. The statute does not say ''with intent to sell'' in this State, but only ''with intent to sell for food purposes,''

without saying where. The counts follow the statute in this. regard. No contention is made but that the State has full and exclusive control over its purely domestic commerce; and the line of distinction between such commerce and that which is, protected by the commerce clause of the Federal Constitution, we have no occasion now to consider.

The respondent says that if the statute read, "with intent to sell in this State," no question could be made; but that, taking this part of the statute in connection with the prohibition of shipping out of the State, it is clear that the sale anywhere, whether within or without the State, is forbidden, and that therefore the cases applicable to the other branch of the case are controlling here. But the statute is to be construed as not intended to have extra-territorial effect, but only an intra-territorial effect. This is the rule for construing statutes in this. respect which use general words, unless they clearly indicate a different intent, which this statute does not. *In re Hickok's Est.*, 78 Vt. 259; *Colquhoun* v. *Heddon*, L. R. 25 Q. B. D. 129; Black, Int. Laws, 91; 2 Suth. Stat. Const. 2d ed., sec. 573. The statute means, therefore, the same as though it read, "with intent to sell in this State." As the respondent concedes. that with this construction the validity of the statute in this respect. cannot be questioned, it requires no further consideration.

That the statute is severable and may be held unconstitutional to the extent before indicated without invalidating that. part on which these two counts are based there can be no doubt. The cases of *State* v. *Scampini*, 77 Vt. 92, and *State* v. *Abraham*, 78 Vt. 53, are full authority.

It is said, however, that these counts are bad in that the place of the intended sale is not laid within this State. The eleventh count alleges that the respondent "of Shelburne in said County of Chittenden, on the 10th day of March, 1907, did then and there keep with intent to sell," etc. The twelfth count is the same in form. Had the words "then and there" been inserted immediately following the word "intent," the allegation of time and place would have been with sufficient certainty and in the form usually adopted in allegations of connected acts. Yet in contemplation of law the allegation is so made; for when the offence charged is a misdemeanor, if time and place be added to the first act alleged it shall be deemed to be con-

nected with all the facts subsequently alleged. *State* v. *Scampini,* above cited.

The pro forma judgment of the county court as to all the counts, except the 11th and 12th is reversed, the demurrer sustained, and the counts adjudged insufficient.  As to the 11th and 12th counts the pro forma judgment of the county court is affirmed.  Cause remanded.

TYLER, J., dissents, holding that the enactment of No. 182, Acts of 1906, was within the proper exercise by the Legislature of the police power of the State.