## STATE v. TWEED.

No. 4053.   Decided March 10, 1924.   (224 Pac. 443.)

1. INFANTS—STATUTE HELD NOT TO GIVE JUVENILE COURT EXCLUSIVE
JURISDICTION IN PRELIMINARY PROCEEDINGS WHERE JUVENILE
OFFENDER CHARGED WITH FELONY. Laws Sp. Sess. 1919, c. 5, § 7,
providing that, if a juvenile ogender is charged with a felony,
the "juvenile court shall act as a committing magistrate with
the same jurisdiction as a justice of the peace sitting as a
committing magistrate, and when it appears that a felony has
been committed and that there is sufficient cause to believe the
juvenile defendant guilty, to commit him to the district court of
the county where the offense is committed, there to be prose-
cuted upon information or indictment as provided by law,"
does not give the juvenile court exclusive jurisdiction in
preliminary hearings accorded juveniles charged with felonies
under Const. art. 1, § 13.

2. STATUTES—LEGISLATURE IN SPECIAL SESSION MAY LEGISLATE ON
MATTER CALLED TO ITS ATTENTION BY GOVERNOR WHILE IN
SESSION, THOUGH NOT STATED IN PROCLAMATION. Under Const.
art. 7, § 6, authorizing the Governor to convene the Legislature
by proclamation on extraordinary occasions, and providing that
the Legislature on such occasions "shall transact no legislative
business except that for which it was especially convened, or
such other legislative business as the Governor may call to its
attention while in session," the Legislature may enact legisla-
tion relating to a matter called to its attention while in session,
though not stated in the proclamation convening the special
session.

3. STATUTES—GOVERNOR HELD TO HAVE CALLED LEGISLATURE'S AT-
TENTION DURING SPECIAL SESSION TO SUBJECT-MATTER OF CERTAIN
LEGISLATION. Where the Attorney General of the state and the
secretary for the Governor attended a joint meeting of commit-
tees from the Senate and the House, during a special session of
the Legislature, and laid before the committees certain bills
which had been prepared by the Attorney General, or in the
Governor's office, in line with his recommendations, the Legis-
lature's attention was called to the matter embraced in such
bills within Const. art. 7, § 6, providing that the Legislature
at such session shall transact no legislative business except
that for which it was especially conveyed, or such other legis-
lative business as the Governor may call to its attention while
in session.

4. CONSTITUTIONAL LAW—EVERY REASONABLE PRESUMPTION IN-

DULGED IN FAVOR OF VALIDITY OF STATUTE. Every reasonable presumption must be indulged in favor of the validity of a statute.

Appeal from District Court, Fourth District, Utah County; *Elias Hansen,* Judge.

Lawrence Tweed was charged with having carnal knowledge of the body of a female under the age of consent, and from judgment quashing the information and dismissing the defendant, the State appeals.

REVERSED.

*M. B. Pope,* Dist. Atty., of Duchesne, for the State.

*Morgan, Coleman & Straw,* of Provo, for respondent.

FRICK, J.

The defendant, Lawrence Tweed, was charged with a felony, to wit with having had carnal knowledge of the body of a female under the age of consent. He was duly arrested, taken before the judge of the city court of Provo, Utah, who, under the laws of this state acts as ex officio justice of the peace and is authorized to discharge all the duties of a magistrate in all criminal proceedings instituted in the name of the state. The defendant being charged with a felony, he was by virtue of article 1, § 13, of our Constitution, entitled to a preliminary hearing before being subject to trial in the district court of Utah county, in which county the offense is alleged to have been committed. A preliminary hearing was duly had upon the charge, and the defendant was by the magistrate aforesaid required to appear before the district court aforesaid for trial. An information in due form as required by our statute was duly filed in said district court, charging the defendant with the crime aforesaid, which, under our statute, constitutes a felony. When the defendant was arraigned, he, through his counsel, interposed

a demurrer to the information and a motion to quash the
same. The demurrer was based upon the alleged ground
that the legislative act under which the defendant was bound
over by the magistrate aforesaid to the district court is in-
valid, and the motion to quash was predicated upon the con-
tention that the defendant had not been given the prelimin-
ary hearing contemplated by our Constitution. The district
court sustained both the demurrer and the motion to quash,
and entered judgment dismissing the defendant. The state
appeals.

The appeal is taken pursuant to Comp. Laws Utah 1917,
§ 9208, and its purpose is to determine the correctness of
the rulings of the district court in sustaining the demurerr
and the motion to quash. It was made to appear at the time
the demurrer and the motion to quash were interposed that
the defendant, at the time the alleged offense was committed,
was under 18 years of age. Indeed, the state conceded that
at that time he was only a little over 17 years of age.

Prior to the enactment of chapter 5 of Laws of Utah 1919,
which was passed at the special session of the Legislature
of the state of Utah of 1919, and to which we shall more
particularly refer hereinafter, the juvenile courts of this state
had exclusive jurisdiction of all offenders "who are under
eighteen years of age." Under the juvenile law, therefore,
when it was made to appear that one charged with an offense
which was not punishable by death, or life imprisonment was
under the age of 18 years when the alleged offense was com-
mitted, the district courts were deprived of jurisdiction to try
or to inflict punishment for the offense, and the matters of
trial and punishment were placed under the sole jurisdiction
of the juvenile courts. At the special session of the Legis-
lature of 1919, however, the Legislature amended the juvenile
law, and in section 7, of that act, among other things, pro-
vided that if a juvenile offender is charged with a felony the
"juvenile court shall act as a committing magistrate with the
same jurisdiction as a justice of the peace sitting as a com-
mitting magistrate, and when it appears that a felony has
been committed and that there is sufficient cause to believe

the juvenile defendant guilty, to commit him to the district court of the county where the offense is committed, there to be prosecuted upon information or indictment as provided by law.''

Under our Constitution (article 1, § 13), any one charged with a felony may be prosecuted either upon an indictment found by a grand jury, or upon an information filed by the prosecuting attorney. In case the prosecution is based upon an information filed by the prosecuting attorney the accused is, however, entitled to a preliminary hearing before a magistrate before the information is lodged against him in the district court, and, if it be made to appear to the district court before a plea on the merits is entered in that court that the accused had not been given a preliminary hearing, and that he has not waived such a hearing, the information may be quashed on motion of the accused, and he cannot be legally tried in the district court until he has either been given the preliminary hearing provided for in the Constitution, or it be made to appear that he has waived such a hearing. In this case the defendant was given the preliminary hearing. It is contended, however, by his counsel, that the city judge of Provo was without jurisdiction to act as a committing magistrate for the reason that the defendant was under the age of 18 years, and hence the juvenile court or judge thereof had exclusive jurisdiction in the premises. The contention is predicated upon the language we have quoted from section 7 of the special act of 1919, supra.

It will be observed that it is there provided that, in case a juvenile is charged with a felony, then the juvenile court shall proceed to act as a magistrate, and shall require the accused to appear before the district court for trial as in all other cases of felony. The contention that the juvenile court or judge has exclusive jurisdiction to act as a magistrate in such case is, in our judgment, not tenable. A young man who is just under the age of 18 years may be charged with a felony, and may be taken before a magistrate in good faith believing him to be over the age of 18 years and hence not within the class of juvenile offenders. If such be the

case, why is the magistrate without jurisdiction merely because the young man has not attained the age of 18 years? If one is charged with a felony under the law of 1919 his age is no longer an obstacle to the jurisdiction of any magistrate or of the district courts of this state. One thus charged, therefore, is subject to trial and punishment in the ordinary way, regardless of his age. He is subject to trial in the district court regardless of his age, provided he has attained the age of discretion. Such was not the case under the old juvenile act, but under that act the moment it was made to appear that the alleged offense was committed by one who was then under the age of 18 years the juvenile court was vested with exclusive jurisdiction. Under the amendment, therefore, as before indicated, it is the nature or character of the offense which determines jurisdiction, and not the age of the accused. That such is the case is made apparent by the special act of 1919. It is there provided that when a juvenile is charged with a felony he may be "prosecuted upon information or indictment as provided by law." In case a prosecution were predicated upon an indictment the juvenile court or judge thereof might have nothing whatever to do with the case, and that is likewise true in case the young man who is charged with a felony is taken before a magistrate for a preliminary hearing. Moreover, no prejudice whatever can result to the accused since the juvenile court or judge is powerless to do anything further than to hold one charged with a felony for trial in the district court, and that is precisely what any other magistrate having jurisdiction in felony cases may do. In our judgment the fact that the juvenile judge was vested with the powers of a magistrate in cases where juveniles are charged with the commission of felonies was for convenience merely to enable him to require the accused to appear before the tribunal for trial so as to avoid sending him before some other magistrate for the required preliminary hearing.

It should be kept in mind, also, that by virtue of chapter 5, aforesaid, where any child who has attained the age of discretion is charged with a felony or with a crime punishable

by death or life imprisonment, and probable cause is found as required by statute, he ceases to be an offender within the purview of the juvenile act for the purpose of trial and punishment, but is subject to be tried and punished precisely as though he had attained the age of 18 years and over as provided in the original juvenile law. In other words, when one is accused of a felony he, for the purposes of trial and punishment, ceases to be a juvenile offender, and the juvenile court no longer has any jurisdiction over him or over the offense except to bind him over as a committing magistrate or dismiss him in case the evidence fails to establish the commission of any offense or probable cause to believe the accused guilty thereof. This being so, the contention that the juvenile court has exclusive jurisdiction to hold the preliminary hearing in a case like the one at bar is clearly untenable.

We are of the opinion, therefore, and so hold, that the district court erred in quashing the information upon the ground that the defendant was not given a preliminary hearing as contemplated by our statute.

This brings us to the state's contention that the demurrer was improperly sustained. As stated at the outset, counsel for the defendant contended, and the district court held, that chapter 5, passed at the special session of the Legislature of 1919, was passed contrary to the provisions of our Constitution, and therefore invalid. Article 7, § 6, of the Constitution, so far as material here, provides:

"On extraordinary occasions, the Governor may convene the Legislature by proclamation, in which shall be stated the purpose for which the Legislature is to be convened, and it shall transact no legislative business, except that for which it is especially convened, *or such other legislative business as the Governor may call to its attention while in session.*" (Italics ours.)

The proclamation of the Governor convening the Legislature is set forth in the Laws of 1919. No reference is made in the Governor's proclamation to the juvenile laws of this state, nor are any amendments thereto suggested by him. Reference to the constitutional provision relating to the convening of special sessions of the Legislature discloses, how-

ever, that it was not necessary for the Governor to include all matters that might be brought to the attention of the Legislature in his proclamation. In our judgment it was a sufficient compliance with the constitutional provision aforesaid if the matters in chapter 5 aforesaid came within "such other legislative business as the Governor may call to its (the Legislature's) attention while in session." From what is said it is quite clear that, while the Legislature must be convened by proclamation, yet it does not follow that all "legislative business" transacted at the special session must be included in the Governor's proclamation. According to the letter of the Constitution it is sufficient if the "legislative business" is called to the attention of the Legislature by the Governor while the Legislature is in special session. It will also be observed that the means that the Governor shall employ or the method he shall use to inform the Legislature what "legislative business" shall be considered by it in addition to that stated in the proclamation are not defined in the Constitution. It is left to the judgment of the Governor what means in his judgment shall be practicable or sufficient to meet the constitutional requirement. As the Governor is made the sole judge respecting the necessity for convening the Legislature, so he is likewise made the sole judge of when it shall be convened and how any additional matters to be considered by it shall be called "to its attention." Moreover, the constitutional provision is intended to leave the matter of special sessions of the Legislature in the Governor's hands to the end that he may have complete control over the Legislature and over the "legislative business" that shall be considered by it. If such were not the case the Legislature might unduly prolong the special session to the detriment of the taxpayers. We are of the opinion that from the record kept by the Legislature which was convened in special session it is clearly made to appear that chapter 5 of the Laws of 1919 enacted at the special session was by the Governor called to the attention of the Legislature. After the Legislature met in special session in obedience to the Governor's proclamation both

the Senate and the House appointed special committees to consider the "legislative business" to be considered by it at the special session. The special committee appointed by the Senate made its report in which it stated the following, among other things:

"Your special committee, appointed to meet with a like committee of the House for the purpose of initiating the introduction of measures in the respective houses, in order to bring the recommendations of the Governor before the Legislature in form for its consideration, and in order to divide the immediate work of the two houses with respect thereto in the interest. of facilitating business, beg leave to report: That we met and held a joint meeting with the House Committee, at which time the Attorney General of Utah and the secretary for the Governor laid before the committee certain bills which had been prepared by the Attorney General, or in the Governor's office in line with his recommendations touching the subjects embraced in his message to the Legislature. Considering it to be in line with the purposes of the creation of the joint committee to cause such measures to be introduced, dividing the same between the two houses. * * *"

The committee then states that there were allotted to the Senate certain measures which are "named Senate Bills 1 to 6, inclusive." It is further made to appear that chapter 5, which is in question here, constituted "Senate Bill No. 4," and was one of the six Senate bills referred to by the committee. This committee report therefore affirmatively shows that chapter 5 must have been considered by the committee and was called to its attention, stating it in the language of the committee, that "the Attorney General of Utah and the secretary for the Governor laid before the committee certain bills which had been prepared by the Attorney General, or in the Governor's office," etc. Chapter 5, as already stated, was one of those bills. Sufficient has been shown, therefore, to demonstrate that chapter 5 was by the Governor called to the attention of the Legislature, and that the method pursued by him was in all respects sufficient to meet the requirements of our Constitution to which reference has been made.

In view that every reasonable presumption must be indulged by this court in favor of the validity of a

legislative act, and in view of what has been said, we **4**
are forced to the conclusion that the district court
erred in holding chapter 5 invalid.

For the reasons stated the judgment of the district court
is reversed upon both grounds.

GIDEON, THURMAN, and CHERRY, JJ., concur.

WEBER, C. J., did not participate herein.