# NORTH TINTIC MINING CO. v. CROCKETT, Secretary of State.

No. 4821.   Decided December 27, 1929.   (284 P. 328.)

*George P. Parker,* Atty. Gen., and *Byron D. Anderson,* Asst. Atty. Gen., for appellant.

*A. L. Booth,* of Provo, for respondent.

ELIAS HANSEN, J.

The plaintiff brought this action in the district court of Salt Lake county pursuant to the provisions of the Uniform Declaratory Judgments Act passed by the Legislature of Utah 1925. Laws Utah 1925, c. 24, p. 40. The defendant filed a general demurrer to the complaint. The demurrer was overruled. Upon the defendant refusing to answer or further plead judgment was rendered declaring that section

1271, Laws of Utah 1925, c. 112, is violative of and contrary to the provisions of section 6, art. 12, of the Constitution of Utah, and therefore void as applied to domestic corporations. The defendant appeals.

The sole question presented for determination on this appeal is whether or not section 1271, Comp. Laws Utah 1917, as amended by Laws of Utah 1919, c. 17, as amended by Laws of Utah 1923, c. 66, as amended by Laws of Utah 1925, c. 112, is constitutional as applied to domestic corporations. The act in question as amended in 1925 provides:

"All domestic corporations and all foreign corporations (except insurance companies) hereafter engaging in any business in this State, before engaging in, or continuing to transact business after the 15th day of November, 1915, shall procure a certificate from the secretary of state of this state, authorizing such corporation to engage in, or to continue to transact its corporate business within this state, and each of the corporations aforesaid, not coming within the exceptions hereinbefore stated, shall pay to the secretary of state a corporation license tax as follows: All corporations with an authorized capital stock of $10,000 or less $5.00."

Then follows an enumeration of the tax that shall be paid by corporations with various amounts of authorized capital stock. The amount of tax required to be paid is increased as the amount of authorized capital stock is increased. A corporation with an authorized capital stock of $4,000,000 or more is required to pay $750. The act then provides:

"That the provisions of this section shall not apply to insurance companies, to religious, charitable, benevolent and educational organizations, or to corporations not organized for pecuniary profit, or to water, canal or irrigation companies furnishing water for culinary and domestic purposes, exclusively by members thereof, or to water users associations organized to comply with the rules of the United States reclamation service, or to any corporations operated by federal control during the continuance of such control, or to building and loan associations, except to the extent of the liabilities on all outstanding capital stock of building and loan associations when a sworn statement of the amount of such liabilities on said outstanding capital stock is filed with the secretary of state on or before the 15th day of November, of each year."

It is also provided in the corporation license tax law that the tax is due and payable to the secretary of state on the 15th day of November of each year. When the tax is paid, the secretary of state is directed to issue to the corporation paying the tax a certificate authorizing it to transact business within the state. A failure to pay the tax works a forfeiture of the right of the corporation to do business within the state. Comp. Laws Utah 1917, §§ 1272, 1273. It will be noted that the annual license tax is not based upon either the amount of property owned, capital employed, or business done within the state, but is determined solely from the amount of the authorized stock of the corporation. It will also be observed that the annual license tax required to be paid is the same for both foreign and domestic corporations so long as the amount of authorized capital stock is the same.

The validity of our corporation license tax law has heretofore been assailed in two proceedings before this court. *Badger* v. *Crockett et al.,* 259 P. 921; *Minneapolis Steel & Machinery Company* v. *H. E. Crockett et al.,* 263 P. 926. In both those cases this court held the law requiring the payment of a corporation license tax invalid, because it places an unwarranted burden on interstate commerce and in effect places a tax on property outside of the state. In this case it is not claimed that the plaintiff is engaged in interstate commerce, or that it owns any property outside of the state. On the contrary, the plaintiff, according to the allegations of its complaint, is a domestic corporation with an authorized capital stock of $2,500,000. It owns 20 patented mining claims situated in the North Tintic mining district, Utah county, Utah. The claims are undeveloped, and the company is not and has not been engaged in the development of its claims. So far as appears from the complaint, plaintiff is not engaged in any other business. The amount of annual tax which the plaintiff is required to pay under the provisios of the corporation license tax act is $400.

It is plaintiff's contention that, if the secretary of state

may not lawfully exact from a foreign corporation a corporation license tax, then likewise he may not lawfully exact such tax from a domestic corporation; that to do so offends against the provisions of section 6, art. 12, of the Constitution of Utah, which reads as follows:

"No corporations organized outside of this state, shall be allowed to transact business within the state on conditions more favorable than those prescribed by law to similar corporations organized under the laws of this state."

Neither in the case of *Badger* v. *Crockett et al.*, supra, nor in the case of *Minneapolis Steel & Machinery Company* v. *Crockett et al.*, supra, were the corporations relieved from the payment of the corporation license tax because they were foreign corporations. The results reached in those two cases were in no sense controlled by the fact that the corporations assailing the validity of the tax were foreign corporations. Had they been corporations organized under the laws of this state, the other facts remaining the same, the results could not well have been different. The law which prohibits a state from imposing a tax upon interstate commerce and upon property without the state applies equally to domestic and to foreign corporations. Neither in the case of *Badger* v. *Crockett et al.*, supra, nor in the case of *Minneapolis Steel & Machinery Company* v. *Crockett et al.*, supra, was any rule announced to the contrary. The law under review in the Badger and Minneapolis Steel & Machinery Company Cases made no distinction between foreign and domestic corporations. The law here involved makes no distinction. The corporation license tax as originally passed, as well as the various amendments thereto, fixes the amount of the tax upon the basis of the amount of authorized capital stock without regard to whether it is a foreign or a domestic corporation. It cannot be said that Laws of Utah 1925, c. 112, § 1271, is violative of or contrary to the provisions of section 6, art. 12, of the Constitution of Utah.

There is, however, an insuperable difficulty which prevents our holding that the act here involved is constitutional as applied to the plaintiff. In the case of *United States* v. *Reese et al.,* 92 U. S. 214, 23 L. E. 563, the Supreme Court of the United States laid down the rule that, when language is used in a penal statute enacted by Congress broad enough to cover wrongful acts without as well as wrongful acts within the constitutional power of Congress, the courts may not introduce words of limitation so as to make it specific, when, as expressed, it is general only. In the course of the opinion the court said:

"It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government."

For more cogent reasons it would be dangerous if the Legislature could set a net large enough to catch all possible property represented by the authorized capital stock of a corporation and leave it to the courts to step inside and say what part of the authorized capital stock of a corporation could rightfully be taxed and what part should be exempt from the tax. A rule of similar import is thus stated in 6 R. C. L. § 122, p. 123:

"If * * * the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their. entirety, it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly the entire statute is invalid. This is simply another way of stating the familiar rule that if the parts of a law are divisible, and some of them are constitutional and others not, the constitutional provisions cannot be held valid if it appears that they would not have been adopted without the other parts."

A long list of cases supporting the text is collected in footnotes. See, also, *Cella Commission Company* v. *Bohlinger* (C. C. A.) 147 F. 419, 8 L. R. A. (N. S.) 537, and the cases

there collected. The rule, however, does not apply where the constitutional and unconstitutional parts are capable of being separated so that each may be read and made to stand by itself. The provisions of the act under review does not admit of separation. The language of section 1271 is plain and unambiguous. It requires the the payment of a specific license tax by both foreign and domestic corporations as a condition to the right of the corporation to transact business in this state. The amount of the license tax is based solely upon the authorized capital stock of the corporation without regard to the amount or location of its property and without regard to the extent of its business or whether such business is intrastate or interstate. When the unconstitutional part of the act is taken out of the act, there is nothing left. It cannot be said that the Legislature intended that the amount of the tax required to be paid should depend upon the location of the corporate property or whether the corporation was or was not engaged in interstate commerce. The language of the act is not susceptible of any such construction. In the Badger and Minneapolis Steel & Machinery Company Cases this court held that the language used in the corporation license tax act was so broad that it, in effect, placed a tax upon property without the power of the Legislature to tax. We may not restrict the plain meaning of the language of the act so that it will include within its terms only such a corporation license tax as the Legislature is empowered to enact. To do so would require this court to make a new statute. Such power is with the Legislature and not with the courts.

THE JUDGMENT IS AFFIRMED.

STRAUP and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J. (dissenting). Any corporation, foreign or domestic (with certain exceptions not material here), before engaging in business in this state is required by

statute to pay an annual license tax computed upon and graduated according to its authorized capital stock. As applied to a corporation whose capital stock is employed in interstate commerce, and whose property represented by its capital stock is in substantial part outside of the state, the statute has been held invalid as resulting in such case in burdening interstate commerce and taxing property beyond the jurisdiction of the state.

The case before us is that of a corporation not engaged in interstate commerce and whose property is situated wholly within the state who contends that because the license tax cannot be legally enforced against those particular corporations situated as above indicated the statute imposing the license tax is wholly invalid and the license tax cannot be exacted from any corporation.

It is fundamental that a statute may be constitutional in one part and unconstitutional in another, and, if the invalid part is severable from the constitutional part, the latter will stand. 6 R. C. L. 121.

In the case before us we have no question of a particular section, clause or provision of the statute which is objectionable. Here the only objection to the statute is that it cannot be constitutionally applied to certain corporations embraced within its broad and general terms.

"A law may be unconstitutional, and void, in relation to particular cases, and yet valid to all intents and purposes in its application to other cases which differ from the former in material characteristics. In other words, when a statute has been passed by the legislature, some part of which is not within the competency of the legislative power, or is repugnant to some provision of the constitution, such part may be adjudged void and of no avail, while all other parts of the act not obnoxious to the same objection may be upheld as valid and have the force of law. The courts in some instances by a restrictive construction have limited the effect of a statute to cases clearly within the field of legislative control. For example, a state tax law, general in its terms, and on its face applying alike to all taxpayers, may be restricted by the court so as to

exempt from its operation stockholders in national banks. Such a statute for that reason would not be declared void as a whole, but should be given effect in reference to all persons embraced within the general language employed, with the exception of those outside the proper field of such legislation." 6 R. C. L. 130.

After further discussion of the subject, and with respect to the precise question in the case at bar, the rule is stated by the same authority as follows:

"The general principle has also been applied to the large and important class of cases where state laws are partially invalid as interfering with interstate commerce. Such statutes have frequently been treated as severable, and sustained to the extent of regulating commerce within the confines of the state." 6 R. C. L. 132.

And in 36 Cyc. 983, it is said:

"The weight of authority is to the effect that where a state statute is primarily intended to regulate domestic commerce, it will be sustained so far as it relates to such commerce, although it contains clauses invalid as attempting to regulate interstate commerce."

The principle is illustrated and applied in a variety of situations by the following cases: *Ratterman* v. *Western Union T. Co.*, 127 U. S. 411, 8 S. Ct. 1127, 32 L. Ed. 229; *Singer Sewing Mach. Co.* v. *Brickell*, 233 U. S. 304, 34 S. Ct. 493, 496, 58 L. Ed. 974; *State* v. *Smiley*, 65 Kan. 240, 69 P. 199, 67 L. R. A. 903; *State* v. *Peet*, 80 Vt. 449, 68 A. 661, 14 L. R. A. (N. S.) 677, 130 Am. St. Rep. 998; *Ex Parte Byles*, 93 Ark. 612, 126 S. W. 94, 37 L. R. A. (N. S.) 774; *Rothermel* v. *Meyerle*, 136 Pa. 250, 20 A. 583, 9 L. R. A. 366; *Commonwealth* v. *People's Exp. Co.*, 201 Mass. 564, 88 N. E. 420, 131 Am. St. Rep. 416; *Attorney General* v. *Electric S. B. Co.*, 188 Mass. 239, 74 N. E. 467, 468, 3 Ann. Cas. 631; *W. & J. Sloane* v. *Commonwealth*, 253 Mass. 529, 149 N. E. 407, 409; *Wood & Co.* v. *Russell*, 102 Okl. 92, 226 P. 1040. See, also, note to *State* v. *Duncan*, Ann. Cas. 1916D, 19.

In *Singer Sewing Mach. Co.* v. *Brickell*, supra, the validity of a statute of Alabama prescribing an annual tax of $50

for each county of the state in which any person should sell or deliver sewing machines was involved. The plaintiff, in selling and delivering sewing machines, transacted what was held to be an intrastate business in each of 29 counties of the state and in one county an interstate business. It was contended that the whole statute was invalid, because its direct terms applied to all commerce. The court held the tax invalid as applied to the county where the business was interstate and upheld it as applied to the 29 counties where the business transacted was local. In answering the contention of total invalidity, Mr. Justice PITNEY, speaking for the court said:

"The statute under consideration does not in direct terms or by necessary inference manifest an intent to regulate or burden interstate commerce. Full and fair effect can be given to its provisions, and an unconstitutional meaning can be avoided, by indulging the natural presumption that the legislature was intending to tax only that which it constitutionally might tax. So construed, it does not apply to interstate commerce at all."

This case is of added interest here because it considers and distinguishes the case of *U. S.* v. *Reese,* 92 U. S. 214, 23 L. Ed. 563, which is cited and relied upon in the majority opinion in the case at bar.

The recent case of *W. & J. Sloane* v. *Commonwealth,* supra, is directly in point upon the question under consideration. There a statute of Massachusetts (G. L. c. 63, § 39) imposing an excise upon "every foreign corporation * * * with respect to the carrying on or doing of business by it within the commonwealth" had been declared invalid as applied to a foreign corporation doing an exclusively interstate business in the commonwealth. *Alpha P. C. Co.* v. *Commonwealth,* 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219. The question of the general constitutionality of the statute in the light of the decision referred to arose, whereupon the court said:

"The question whether G. L. c. 63, § 39, is wholly unconstitutional, because not constitutionally applicable to foreign corporations en-

gaged here exclusively in interstate commerce, is now presented for decision for the first time. * * * The decision of *Attorney General* v. *Electric Storage Battery Co.*, 188 Mass. 239, 240, 241, 74 N. E. 467, 3 Ann. Cas. 631, compels the conclusion that the whole section (G. L. c. 63 § 39) does not fall because it is not applicable to foreign corporations engaged exclusively in interstate commerce. It is to be presumed that the Legislature intended the section to be applicable only to foreign corporations engaged in this commonwealth in intra-state commerce and thus subject, within constitutional bounds, to the taxing jurisdiction of the commonwealth. (Citing cases.) As thus construed it is valid under the authority of *Judson Freight Forwarding Co.* v. *Com.*, 242 Mass. 47, 136 N. E. 375, 27 A. L. R. 1131."

The further contention that the statute in question is wholly invalid because of the general rule respecting legislative intent stated in 6 R. C. L., § 122, p. 123, is, in my judgment, insupportable. The majority opinion quotes a part only of the section and the rule. The rule as stated is subject to numerous limitations and modifications as shown by the discussion of the subject by the author in the sections following section 122. Especially in § 129, where the author says:

"Another class of cases in which a statute may be in part valid and in part invalid consists of laws enacted by a legislature in broad, general terms, covering not only persons and property, as to which the legislature clearly has the right to make regulations, but apparently, applying also to individuals and property protected from such legislation," etc.

But tested alone by the question of legislative intent the statute ought to be upheld as against the respondent. The rule stated by the authority quoted is that:

"If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their entirety,

it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly the entire statute is invalid. This is simply another way of stating the familiar rule that if the parts of a law are divisible, and some of them are constitutional, and others are not, the constitutional provisions cannot be held valid if it appears that they would not have been adopted without the other parts. If sufficient remains to effect the object of the statute without the aid of the invalid portion, the latter only should be rejeced. Thus where a statute provides for two distinct objects, it has been held that it may be sustained as to one of them although the provisions relating to the other may be unconstitutional and void. The Portion which remains should express the legislative will independently of the void part," etc.

Of course we have here no question of a component part of the statute being invalid. It is a situation where the statute for constitutional reasons cannot be applied to certain corporations. These corporations are readily and easily separable from others who on their own account cannot question the statute. There is no feature of dependence of one valid provision upon an invalid one. Excluding the class of corporations as to whom the tax cannot be enforced, there is left a workable statute, which, when applied to those corporations legally subject to it, will carry out the plain legislative intent, which is to produce revenue for the state government.

In the numerous cases already cited in this opinion the courts were confronted with the question of legislative intent, and answered the same by indulging the presumption that the Legislature intended only to deal with the persons and corporations within its power and jurisdiction.

I am not prepared to say that this statute would not have been passed had the Legislature known that it would not apply to corporations engaged in interstate commerce. By exempting such corporations from the tax the law is not rendered inoperative nor the purpose of the Legislature to raise revenue destroyed. I dare say the vast majority of

corporations doing business in this state are not engaged in interstate commerce.

It is elementary that a statute may not be declared unconstitutional and invalid, except upon the most satisfactory grounds. Its invalidity must appear beyond reasonable doubt. *Blackrock C. M. & M. Co.* v. *Tingey,* 34 Utah 369, 98 P. 180, 28 L. R. A. (N. S.) 255, 131 Am. St. Rep. 850. When there is any reasonable doubt as to the validity of a statute the doubt must be resolved in favor of validity. *Board of Medical Examiners of Utah* v. *Blair,* 57 Utah 516, 196 P. 221, *Summit County* v. *Rich County,* 57 Utah 553, 195 P. 639. If a legislative act is susceptible of two constructions, one conformable to the Constitution and the other not, the court will adopt the one that is conformable, and reject the one that is not. *Pleasant Grove* v. *Holman,* 59 Utah 242, 202 P. 1096. Every reasonable presumption must be indulged in favor of the validity of a statute. *State* v. *Tweed,* 63 Utah 176, 224 P. 443. Courts must adopt such construction of statute as will make it constitutional if language permits. *State ex rel.* v. *Franklin,* 63 Utah 442, 226 P. 674. Court's first duty is to presume that statute is constitutional and solve every reasonable doubt in favor of its constitutionality. *Jackson* v. *Bonneville Irr. Dist.,* 66 Utah 404, 243 P. 107.

I am convinced that the great weight of authority, based upon correct principles and sound reasoning, not only justifies, but requires, that the statute be upheld as against the respondent and other corporations generally doing business in this state, notwithstanding a few corporations engaged in interstate commerce are exempt from its application.

FOLLAND, J., concurs in the views expressed by CHERRY, C. J., in his dissenting opinion.